CHARLES M. PRESTON, as Receiver, etc., Appellant, *v.* THOMAS L. SOUTHWICK et al., Respondents.

M., a merchant, received loans from two friends under a promise on his part to provide for them in case of misfortune; finding it impossible to continue business he transferred his stock of goods to them by instruments, in form bills of sale, which were duly filed; the property transferred did not exceed in value the amount of said loans to M. The transferees took possession of the property, and thereafter entered into an agreement in writing with M. whereby he acknowledged receipt of possession of the property and agreed to carry on the business in their names as their agent for the purpose of converting the property into money, the proceeds to be paid to them. No such agreement was contemplated at the time of the transfer. In an action by a receiver of the property of M. to recover the value of the property so transferred, on the ground that the transfer was fraudulent as against his creditors, the complaint alleged that the transfers were bills of sale, and this was admitted by the answer; the referee found that the transfers were absolute conveyances and were executed in good faith. *Held,* the findings were justified; that the subsequent agreement did not amount to a defeasance; but that if the transfers were to be considered as " conveyances intended to operate as mortgages of goods," and that intent was expressed in the subsequent agreement, it was not necessary in order to comply with the statute in reference to such conveyances (§ 1, chap. 279, Laws of 1833), that the agreement should be filed; the filing of the conveyances was sufficient.

The fact that a debtor, who has transferred personal property to creditors in payment of his indebtedness, is left in charge of the property and deputized to act as the agent of the vendees in disposing of it, is not conclusive evidence of a fraudulent intent in the transfer, whether the transfer be by way of mortgage or bill of sale; that fact simply affords a presumption of fraud which, in the absence of a satisfactory explanation, may establish it. (2 R. S. 136, § 5.)

Nor is the fact that such debtor is to be paid for his services by the transferees, if the agreement therefor is not made a condition of the transfer, conclusive evidence of a fraudulent intent.

*It seems* that if, after an insolvent debtor has surrendered his property to his creditors, he thereafter renders valuable services in and about said property upon request, the law will, in the absence of any express agreement, imply a promise to pay him therefor.

Evidence was given that property, not correctly described in the bills of sale, was taken possession of by the transferees and sold. The referee found that the debtor intended to cover his whole stock in trade by the bills of sale and so declared to the vendees at the time of the transfer. *Held*, that the vendor, having voluntarily delivered possession of the property intended to be conveyed to his vendees when he could lawfully do so with an honest intent, no question can now be raised in respect thereto by general creditors, especially after a sale of the property and the application of the proceeds upon the debt owing to the vendees.

M., as a witness for defendant on the trial, was asked and allowed to answer, under objection and exception, this question: "Did you turn over the whole stock of goods in the store and believe that the bill of sale covered it?" *Held*, no error; that defendants had a right to prove what was done in delivering possession of the goods and, in view of the issue of fraud, that M. delivered possession in good faith, believing all the property was covered by the bill of sale.

Charges of fraud were predicated upon the fact that the vendees continued the business for a short time, selling goods at retail and on credit. *Held*, that it was competent for defendants to rebut any presumption of fraud arising from the mode pursued in disposing of the stock, by showing it was the most prudent course, securing a higher price for the property than if it had been sold at auction.

Reported below, 42 Hun, 201.

(Argued April 29, 1889; decided June 11, 1889.)

APPEAL from judgment of the General Ter          preme
Court in the third judicial department, ente          order
made November 29, 1886, which affirmed a          favor
of defendants, entered upon the report of a

This action was brought by plaintiff, as r          pointed
in supplementary proceedings, of the prop          fects of
defendant McIntyre, to set aside two bills o          uted by
him to defendants Southwick and Wills as          and to
recover the value of the property so transfe
The material facts are sufficiently stated i          tion.

*G. R. Adams* for appellant. The outside          it, which
was reduced to writing by learned counsel a          d within

an hour from the time it was made, became a part of the transaction, and its effect cannot be disregarded. (*Haydock* v. *Cooper*, 53 N. Y. 69.) This agreement would have been sufficiently executed by McIntyre alone as mortgagor, but Southwick, acting for himself and, by request, for Wells, executed it for both Wells and himself under direction of counsel; and so understood by all the parties having acted under it and adopted it, they ratified it by acceptance. (*Brown* v. *Platt*, 8 Bosw. 324; *Leslie* v. *Wiley*, 47 N. Y. 648; *Morse* v. *Pesant*, 2 Keyes, 16.) This agreement merged and superseded all prior negotiations and agreements. (*Renard* v. *Sampson*, 12 N. Y. 561; *Baker* v. *Higgins*, 21 id. 398; *Wilson* v. *Deen*, 74 id. 534.) The transaction as effected by the written agreement superseded the bills of sale. (*Walker* v. *Henry*, 85 N. Y. 130, 135.) The bills of sale and the written agreement relating to bills of sale constitute an indivisible transaction. (*Dusenbury* v. *Hulbert*, 59 N. Y. 544; *Dietz* v. *Farish*, 79 id. 520, 523; *Knowles* v. *Toone*, 96 id. 534; *Marsh* v. *McNair*, 99 id. 179; *Rogers* v. *Smith*, 47 id. 325.) The parties are concluded by the writings as to the intent expressed therein. (*Marsh* v. *McNair*, 99 N. Y. 179; *Brady* v. *Read*, 94 id. 631–633; *Edgell* v. *Hart*, 9 id. 217.) By operation of law, when the considerations of the bill of sale are paid, the power to sell under this agreement ceases, and all claim of the grantees to any remaining property, or a surplus, is satisfied, discharged, and both the said power to sell and bills of sale are "*ipso facto* void." (*Charter* v. *Stevens*, 3 Denio, 33–36; *Cameron* v. *Irwin*, 5 Hill, 272; *Truscott* v. *King*, 6 N. Y. 162; *West* v. *Crary*, 47 id. 423–425.) The defendants and referee are especially concluded by the answer admitting the agreement, and specifically alleging "that the bill of sale to said Wells was to secure the said Wells for liability incurred by said Wells for said McIntyre." (Code of Civ. Pro. § 522; *Potter* v. *Smith*, 70 N. Y. 299; *Page* v. *Willet*, 38 id. 28–31; *Wright* v. *Delafield*, 25 id. 266.) Absolute conveyances intended for securities are, in legal effect, treated as mortgages. (*Keller* v. *Paine*, 107 N. Y. 86; *Barry* v. *H., B. F. Ins. Co.*,

110 id. 1 ; *Horn* v. *Keteltas*, 46 id. 611 ; *Odell* v. *Montross*, 68 id. 499.) Where property is assigned to creditors to secure their particular demands, a trust as to the surplus results from the nature of the security, and is not the object or one of the objects of the assignment. Whether expressed in the instrument or left to implication is immaterial. (*Leitch* v. *Hollister*, 4 N. Y. 216 ; *Knapp* v. *McGowan*, 96 id. 86 ; *Van Buskirk* v. *Warren*, 2 Keyes, 122, 125.) An absolute bill of sale of property, and an oral agreement for the grantee to sell and apply proceeds to pay grantor's indebtedness to grantee, and surplus to be distributed to grantor's other creditors, must be treated as a mortgage. (*Smith* v. *Beattie*, 31 N. Y. 543 ; *Bragelman* v. *Daue*, 69 id. 69 ; *Coe* v. *Cassidy*, 72 id. 137.) The referee erred in his findings of fact, excepted to by plaintiff, wherein he finds, viz. : " That, immediately after the execution of said bills of sale, the defendant Southwick, for himself and said Wells, and by his authority took possession of the stock of goods in the store, and thereafter continued in possession thereof until sold." (*Hale* v. *Sweet*, 40 N. Y. 101 ; *Porter* v. *Parmley*, 52 id. 185 ; *Randall* v. *Parker*, 3 Sandf. 69 ; *Crandall* v. *Brown*, 18 Hun, 461 ; *Bullis* v. *Montgomery*, 50 N. Y. 352 ; *Steele* v. *Benham*, 84 id. 634 ; *Dutcher* v. *Swartwood*, 15 Hun, 31 ; *Stimson* v. *Wrigley*, 86 N. Y. 338, 339.) As the agreement in writing was not filed in clerk's office in Ulster county, the bills of sale were void as to the creditors of McIntyre. (Laws of 1883, chap. 279, §§ 1, 2 ; *Ely* v. *Carnley*, 19 N. Y. 496, 498 ; *Dillingham* v. *Bolt*, 37 id. 198, 202 ; *Griswold* v. *Sheldon*, 4 id. 598 ; 1 R. S. 756, § 3 ; *White* v. *Moore*, 1 Paige, 551.) The material part of the instruments as mortgages was the written agreement. It was this which created a defeasance, and the instruments together made a mortgage. (*Bragelman* v. *Daue*, 69 N. Y. 74; *Coe* v. *Cassidy*, 72 id. 137 ; *Thompson* v. *Blanchard*, 4 id. 303 ; *Brown* v. *Bement*, 8 Johns. 96.) The filing of the bills of sale, and omitting to file the defeasance, being oral or in a separate instrument, is not fair and good filing of the mortgage as against creditors. (*Gaither* v. *Mumford*, 1 N. C.

T. R. 167; *Griswold* v. *Sheldon*, 4 N. Y. 598.) By the erroneous decision of a sale and immediate delivery and continued change of possession, the burden of proof was put upon the plaintiff to show fraud. But upon the facts proved of a security and no change of possession, the plaintiff establishes by statute fraud, and the affirmative was upon the defendants to show the absence of fraud. (2 R. S. 136, § 5; *Griswold* v. *Sheldon*, 4 N. Y. 596; *Stoddard* v. *Butler*, 20 Wend. 507; *Matthews* v. *Coe*, 49 N. Y. 57, 61.) The parties are deemed to have intended the natural and inevitable consequences of their acts, and that was to hinder, delay and defraud McIntyre's creditors. (*Coleman* v. *Burr*, 93 N. Y. 31; *Nicholson* v. *Leavitt*, 10 id. 598.) The fact of an agreement to take security from a known insolvent, in the future, upon his property being acquired on credit, is equivalent to taking security upon property by mortgage to be a lien upon after-acquired property, and should equally be held fraudulent in law. (*Edgell* v. *Hart*, 9 N. Y. 213; *Smith* v. *Cooper*, 27 Hun, 565.) When a debtor becomes insolvent his property belongs in equity and justice to his creditors, and not to him, and thenceforth the object and aim of the law is to give it to his creditors. (*Nicholson* v. *Leavitt*, 10 N. Y. 595; Bump on Fraud. Conv. [3d ed.] 392; *Billings* v. *Russell*, 101 N. Y. 226.) The facts established a fraudulent intent, known to and participated in by Southwick, for which the bills of sale are void as to creditors. (*Starin* v. *Kelly*, 88 N. Y. 421; *U. Nat. Bk.* v. *Warner*, 12 Hun, 306; *Warner* v. *Warren*, 46 N. Y. 228, 233; *Sturgis* v. *N. J. S. Co.*, 62 id. 625; Bump on Fraud. Conv. [3d ed.] 205.) The fund and surplus in the bank in the name of Southwick and Wells was an apparent obstruction, preventing its being reached by creditors. (*Billings* v. *Russell*, 101 N. Y. 231; *City Bank* v. *Westbury*, 16 Hun, 458; *Ball* v *Slafter*, 26 id. 353, 355, 356; 98 N. Y. 622.) Where findings are contradictory, those must be applied which are most favorable to the defeated party in aid of his exceptions. (*Bonnell* v. *Griswold*, 89 N. Y. 127; *Bennett* v. *Buchan*, 76 id. 386; *Porter* v. *Parmley*, 52 id. 185; *Steele* v. *Benham*, 84 id. 634, 640.) It

being the fact that McIntyre remained in possession of the property described in bills of sale under an agreement to conduct the business of selling at retail, it was conclusive evidence of fraud by statute, unless the defendants affirmatively show this agreement without any fraudulent intent.   (2 R. S. 136, § 5; *Stoddard* v. *Butler*, 20 Wend. 507; *Griswold* v. *Sheldon*, 4 N. Y. 581, 591; *Stimson* v. *Wrigley*, 86 id. 332, 337; *City Bank* v. *Westbury*, 16 Hun, 458; *James* v. *Cowing*, 82 N. Y. 451, 458.)   The agreement permitting McIntyre to use the proceeds of sale to pay expenses of his business in mending and repairing was taking so much from the fund that should be applied on the mortgage debts.   (*Smith* v. *Cooper*, 27 Hun, 565, 567; *Edgell* v. *Hart*, 9 N. Y. 213; *Mittnacht* v. *Kelly*, 3 Keyes, 407.)   McIntyre having the right to sell and to take the necessary support for his family from the proceeds of sales of the mortgaged property, secured to himself a personal benefit therein, for which the bills of sale and agreement are fraudulent in law.   (*Potts* v. *Hart*, 99 N. Y. 168; *Brackett* v. *Harvey*, 91 id. 223; *Southard* v. *Benner*, 72 id. 431; *Marston* v. *Vultee*, 12 Abb. Pr. 148; *Young* v. *Heermans*, 66 N. Y. 374.)   The description of articles in bills of sale being specific and not general, and being in clear language, that description is controlling and cannot be varied by oral testimony.   (*Brady* v. *Read*, 94 N. Y. 631–633; *Edgell* v. *Hart*, 9 id. 217.)   It is a material fact that McIntyre was insolvent, and by these bills of sale was transferring his property to give a preference to these creditors, Southwick and Wells.   (*Platt* v. *Lott*, 17 N. Y. 481.)   By the Laws of 1858, chapter 314, sections 1 and 2, the plaintiff, as a receiver, was entitled to recover from Southwick and Wells the value of all property of McIntyre, an insolvent, which, in fraud of the rights of creditors, was "taken, or in any manner interfered with" by them.   (*Southard* v. *Benner*, 72 N. Y. 427; *Underwood* v. *Sutcliff*, 77 id. 62.)   An answer having been interposed, the plaintiff could have any relief consistent with the case made by the complaint and embraced within the issues. (Code of Civ. Pro. § 1207; *Murtha* v. *Curley*, 90 N. Y. 377;

*Hemmingway* v. *Poucher*, 98 id. 281.)   It would be incompetent for either party to show that they designed the instruments to have a different operation from the one the law assigns.  (*Edgell* v. *Hart*, 9 N. Y. 217; *Brady* v. *Read*, 94 id. 633.)   The opinion of experts cannot be received where the inquiry is into a subject the nature of which is not such as to require any peculiar habits or study in order to qualify a man to understand it.  (*Fergerson* v. *Hubbell*, 97 N. Y. 513; *Schermerhorn* v. *Tyler*, 11 Hun, 551.)

*J. Newton Fiero* for respondents.   It is not fraudulent for a diligent creditor to protect himself.  (*Jewett* v. *Noteware*, 30 Hun, 194; *Billings* v. *Billings*, 31 id. 66.)   Even if McIntyre had a fraudulent intent, the defendants are not affected by it.  (*Leach* v. *Flack*, 31 Hun, 605; *Dudley* v. *Danforth*, 61 N. Y. 626; Bump on Fraudulent Con. 87.)   The delivery of the goods not specifically described in the bill of sale passed the title.   The bill of sale is, in all respects, open to explanation, as, for instance, that it was a mortgage.  (*Chapin* v. *Dobson*, 78 N. Y. 80, 81; *Juillard* v. *Chaffee*, 82 id. 534, 535.)   Parol proof was proper as to goods outside bill of sale.  (*McMaster* v. *Insurance Co.*, 55 N. Y. 234.)   Defendants not having been made whole by the entire stock, plaintiff cannot complain.  (*Dixon* v. *Buck*, 42 Barb. 60, 70, 71.)   Evidence may be given showing the facts relative to a bill of sale, as to whether there was an agreement it was to be a mortgage.   (31 N. Y. 542.)   The rule that parol evidence cannot be given to contradict or vary a written agreement is limited to the parties actually contracting with each other by the agreement and their privies.   It cannot be invoked by a stranger to the contract.  (*Coleman* v. *Bank of Elmira*, 53 N. Y. 389; *McMaster* v. *Insurance Co.*, 55 id. 234.)   It was competent to rebut the presumption of fraud by showing honest intent in turning over the goods where fraud is charged. It was competent to show honest intent in making bill of sale, and that it was consistent with delivery of all the goods.

Sickels — Vol. LXX.   19

(*Seymour* v. *Wilson*, 4 Kern. 567 ; *Forbes* v. *Waller*, 25 N. Y.
530 ; *Tracy* v. *McManus*, 58 id. 258 ; *McKown* v. *Hunter*, 30
id. 625 ; *Filkins* v. *People*, 69 id. 107 ; *Dutchess Co. M. Ins.
Co.* v. *Hachfield*, 73 id. 229.)   This court is not at liberty to
question the finding of a trial court as to the good faith
of a sale made to creditors for the purpose of paying a debt
due them.  (*Van Buskirk* v. *Warren*, 39 N. Y. 127 ; *Coe*
v. *Cassidy*, 72 id. 133 ; *Haydock* v. *Cooper*, 53 id. 38.)
The bills of sale to Southwick and Wells cannot be treated
as mortgages as matter of law.  (*Farmer's Bank* v.
*Cowan*, 39 N. Y. 218 ; *Miner* v. *Johnson*, 5 T. & C. 48 ;
*Parshall* v. *Eggert*, 54 N. Y. 23 ; *Smith* v. *Beattie*, 31 id.
542 ; *Dixon* v. *Buck*, 42 Barb. 70.)   The plaintiff is not in a
position to ask that the bills of sale be declared a mortgage,
no such theory having been advanced by the complaint.
(*Van Wyck* v. *Baker*, 16 Hun, 171.)   If the transaction could
possibly be construed otherwise than a sale, it was a pledge of
the property to defendants.  (*Parshall* v. *Eggert*, 54 N. Y.
23.)   On the ground that the bills of sale were, in fact, mort-
gages, the plaintiff cannot recover in this action.  (*Conkling*
v. *Shelley*, 28 N. Y. 363 ; *Brackett* v. *Harvey*, 91 id. 214, 223 ;
*Brown* v. *Guthrie*, 110 id. 435 ; 34 Hun, 29 ; *Kerr* v.
*Dildine*, 6 N. Y. S. Rep. 163, 167.)   If the instruments are
mortgages, it was not necessary to file them against the receiver.
(*Niagara Co. Bank* v. *Lord*, 33 Hun, 564.)   A receiver has
no right to assail a transfer except for fraud, and the statute
laws (1858, chap. 314) give him no authority to attack a
chattel mortgage because it was not filed.  (*Van Heusen*
v. *Radcliff*, 17 N. Y. 580 ; *Southard* v. *Benner*, 72 id. 428 ;
*Ball* v. *Slater*, 26 Hun, 353 ; *Crispeld* v. *Bogardus*, 18 Abb.
N. C. 334 ; *Steward* v. *Cole*, 43 Hun, 164.)

Ruger, Ch. J.   This case presents many of the features
usually accompanying transfers of property made by an
insolvent debtor to preferred creditors, which have incurred
the disapprobation of those who are not benefited by their
provisions.   Notwithstanding the right of a debtor under the

law to make such disposition of his property among his credit-ors, which, if made in good faith, shall cause some to be wholly paid and others to receive little or nothing upon their claims, they are seldom satisfactory to the excluded creditors and lead almost invariably, and perhaps naturally, to efforts to over-throw the disposition made by the parties of the property.

In this case the debtor, who had been for years under the necessity of soliciting aid and assistance in pecuniary affairs from two of his neighbors, received it under a promise to provide for them in case misfortune overtook him, and when it became impossible for him to continue business longer, trans-ferred his scanty stock to those who had befriended him, and for want of requisite property to pay all, left his general creditors unprovided for.    No question was made on the trial but that the debts and liabilities preferred were just and honest obliga-tions, and it was not claimed in the complaint that the value of the property transferred exceeded the amount of such liabilities in any appreciable degree.    The facts were fully investigated before the referee, and he found that the trans-fers assailed were made in good faith and without intent to hinder, delay or defraud creditors, and that the property transferred was not more than sufficient in value to pay the preferred claims.    A perusal of the evidence has convinced us that this finding was warranted by the proof.

Although the appellant has argued several questions before us which are claimed by him to be unaffected by the findings, we are of the opinion that he has not successfully avoided the natural force and effect of the conclusions upon the facts arrived at by the referee upon the trial.    His most strenuous contention is based upon some supposed distinction between bills of sale and mortgages, and the claim that if these trans-fers are held to be mortgages, as he argues they should be, that they have not been properly filed under the statute to constitute them valid liens upon the property.    There is no question but that they were filed, whatever they may be held to be.    It matters little, in our view, whether they are regarded as absolute bills of sale given in satisfaction of the debtor's

obligations, or transfers by way of mortgage as security for debts. In either view, the main question in the case is whether they were given for the purpose of securing or paying valid and existing obligations of the debtor, or with the intent to hinder, delay or defraud creditors. If the debtor's purpose was to secure or pay honest debts, it could properly be done either by way of a mortgage or bill of sale, and if the statutory requirements applicable to such transfers were complied with,. the creditors have no reason to complain, if they were made in good faith. In either aspect, we think there was sufficient evidence to show that all was done by the parties in reference to filing the instruments of transfer, that was necessary to rebut. any presumption of fraud arising from any of the circumstances of the case. As found by the referee, the transfers were not only executed in good faith for a good consideration, but there was also a proper filing thereof under the statute as well as a change of possession of the property described therein.

Some difference undoubtedly exists between bills of sale and mortgages, but none, we think, which can be regarded as materially affecting the substantial rights of the parties here. Thus a bill of sale might be regarded as fraudulent if the property transferred greatly exceeded in value the amount of its consideration, while such a circumstance would not affect the validity of a mortgage. Here, however, the referee has found the property transferred was no more than sufficient in value to satisfy the demands of the vendees. No inference. of fraud can, therefore, be based upon an alleged inadequacy of consideration. Neither does any difference arise over questions relating to the filing or non-filing of such transfers. If they be considered as absolute bills of sale, they were not required to be filed, as it is only "mortgages or conveyances intended to operate as mortgages of goods," etc., that are referred to in the statute requiring filing. (§ 1, chap. 279, Laws of 1833.) If we regard them as conveyances, intended to operate as mortgages, then they were properly filed in accordance with the statute.

It is claimed by the appellant that the evidence shows that the transfers were intended to operate as mortgages only, and because this intent did not appear in the instruments filed, the filing referred to did not satisfy the requirements of the statute.    It would be a sufficient answer to this contention to say that the referee has found that the instruments in question were not intended to operate as mortgages, but were absolute transfers of property made in satisfaction of vendor's obligations to his vendees; and this finding has ample evidence to support it.    The complaint alleged the transfers to be bills of sale.    The answer admitted the allegation of the complaint and the instruments themselves purported to be absolute transfers of property.    There was nothing which took place at the time of their delivery, or thereafter, which subverts or overthrows the conclusions of the referee.

Soon after the bills of sale were delivered the vendees took possession of the property and executed a contract with the vendor, which the appellant now claims was a defeasance. The paper in question was neither in form or effect a defeasance.    It was not executed or agreed upon at the time of the delivery of the bills of sale, but was a subsequent transaction, intended simply to regulate the relations of the parties in view of the rights acquired under the bills of sale by the vendees, and consisted of an arrangement whereby the debtor was to act as the agent in carrying on business in the name of the vendees for the sole purpose of converting the property into money and paying its proceeds to the vendees.    No other purpose is disclosed by the paper.    It acknowledges the receipt of the possession of the property from the creditors and his obligation to sell it and pay the proceeds to them.    It reserved no interest in the property to the debtor and provided for its unconditional appropriation to the payment of the debts mentioned in the bills of sale.

There was no necessity for or propriety in the filing of this paper with the bills of sale.    The instruments required to be filed are: First. Mortgages; that is, instruments having the form and character of mortgages.    Second. Conveyances

intended to operate as mortgages. It is quite immaterial how this intention is expressed, whether in writing or by parol. However it exists, the requirement of the statute is that the conveyance shall be filed. It is quite obvious that the statute did not intend to require the filing of an intention, as that would be physically impossible if resting in parol alone. The existence of a parol agreement between parties that a conveyance shall be regarded as a security for a debt, undoubtedly invests it in many respects with the characteristics of a mortgage; but, strictly speaking, it does not make it a mortgage. It must, then, be filed as a conveyance or bill of sale, and the extrinsic agreement forms no part of the instrument required to be filed. The willful concealment or suppression of such an agreement by the parties might be regarded as some evidence of a fraudulent intent; but it has no effect upon the question of a proper filing of the instrument. The statute is aimed at secret liens and mortgages, and declares all such void as against creditors unless accompanied by an actual and continued change of possession, or a filing thereof as provided. There was no secrecy about the transaction in question. If these instruments could be regarded as within the meaning of the statute, its object was fully complied with by the filing of the bills of sale, making the transfer a matter of public record.

The fact that the debtor was deputized to act as the agent of the vendees in disposing of the property is not conclusive evidence of a fraudulent intent in the transfer, whether he be regarded as acting under a mortgage or a bill of sale. (*Brackett* v. *Harvey*, 91 N. Y. 214; *Brown* v. *Guthrie*, 110 id. 435; *Ball* v. *Loomis*, 29 id. 412; *Miller* v. *Lockwood*, 32 id. 293.) When a debtor is left in charge of property conveyed by him to a creditor in payment, or as security for a debt, that circumstance affords a presumption of fraud, which, in the absence of a satisfactory explanation, will, in some cases, become conclusive. (3 R. S. 2328, § 5; *Blaut* v. *Gabler*, 77 N. Y. 461.) When, however, satisfactory reasons exist therefor, and it is done in good faith, there is no rule of law

which prevents a creditor from availing himself of the services of his debtor in disposing of property honestly transferred in payment of debts. Neither is the fact that such debtor is to be paid for his services by the vendees, if the agreement therefor is not made a condition of the transfer, conclusive evidence of a fraudulent intent. A debtor is under no obligation to give his services to his creditors after he has failed and surrendered his property to them ; and if he thereafter renders valuable services upon request, the law will, in the absence of any express agreement, imply a promise to pay him therefor ; and it furnishes no proof of fraud, if done in good faith, for such creditors to promise to, or pay for such services.

Some evidence was also given that property, not correctly described in the bills of sale, was taken possession of by the vendees and sold by them. It was found by the referee that the debtor intended to cover his whole stock in trade by the bills of sale, and so declared to his vendees at the time of the transfers and upon the delivery of the stock to them by the vendor. The vendor having voluntarily delivered possession of the property intended to be conveyed to his vendees, at a time when he could lawfully do so, if done with an honest intent, no question can now be raised in respect thereto by general creditors, especially after a sale of the property and the application of its proceeds upon the debts owing to the vendees.

It is also claimed by the appellant that an exception to the question put by the defendants to the debtor McIntyre : "Did you turn over the whole stock of goods in the store and believe the bill of sale covered it ? " which was objected to as incompetent and immaterial, was well taken. It will be observed that a portion of the question was clearly competent. The defendants had a right to prove what was done in delivering possession of the goods, and we think, in view of the issue of fraud raised in the case, it was competent for the defendants to prove that he did so in good faith, believing it was covered by the bills of sale.

The appellant also objected to an answer to the following

question put to the defendant McIntyre : " Could that property, in your opinion, have been sold at public auction for over $1,775 at time bills of sale were delivered ? "    The case shows that charges of fraud were predicated upon the fact that the vendees continued the business for a short time selling goods at retail and on credit, instead of selling the same at auction. It was certainly competent for the defendants to rebut any presumption of fraud arising from the mode pursued in disposing of the stock and to show that the method of sale was adopted for the best interest of the parties concerned and not .for the benefit of the debtor, and that they pursued the most prudent course to secure the highest price for the property. The proof tended to show the reasons for selling the property as they did.    The question was not intended to put a value upon the property, but to show that a sale at auction was not deemed advisable under the circumstances of the case.    We think that in this view the question was not objectionable.

No other questions have been raised by the appellant which require particular notice, and we are of the opinion that no sufficient reason exists for disturbing the judgment appealed from.

The judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.