BENJAMIN SALVIN et al., as Executors of HARRY SALVIN, Deceased, Appellants, *v.* MYLES REALTY COMPANY et al., Respondents.

Mortgage — guaranty — usury — when mortgage may be kept alive after payment thereof — guarantor of loan to a corporation cannot raise defense of usury — defense of usury in action to foreclose mortgage — when facts do not sustain such defense.

1. A mortgage, when paid, may be kept alive for other purposes, when the rights of creditors and third parties have not intervened.

2. Where a corporation is the primary debtor one who guarantees payment cannot interpose the defense of usury by reason of the express provision of the statute (General Business Law, § 374; Cons. Laws, ch. 20) since he stands in no better position than does the corporation.

3. This action was brought to foreclose a mortgage to which the defense of usury was interposed. On examination of the evidence, *held*, that there is no basis for the conclusion that the loan was made upon a usurious agreement.

*Salvin* v. *Myles Realty Co.*, 177 App. Div. 886, reversed.

(Argued June 5, 1919; decided July 15, 1919.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 16, 1917, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Paul Armitage* for appellants. The corporation, the Myles Realty Company, was the owner of the mortgage. It had acquired title more than sixteen months before the transaction in suit. The plaintiff loaned to it on the faith of its record title and the assurance that it owned the mortgage. There is no evidence that the mortgage was held by the corporation as a dummy for defendant Rieser, or that the plaintiff, before the loan, was made cognizant of that fact. (*Morton* v. *Thurber*, 85 N. Y. 550; *Guggenheimer* v. *Geissler*, 81 N. Y. 293; *Condit* v. *Baldwin*, 21 N. Y. 219; *Mutual Loan Co.* v. *Lynch*, 54 App. Div. 559; *U. S. Mortgage Co.* v. *Sperry*, 138 U. S. 313; *Stillman* v. *Northrup*, 109 N. Y. 473; *Booth* v. *Swezey*, 8 N. Y. 276; *Valentine* v. *Conner*, 40 N. Y. 248; *Matter of Consalus*, 95 N. Y. 340; *Matthews* v. *Coe*, 70 N. Y. 239; *Morris* v. *Talcott*, 96 N. Y. 100; *Haughton* v. *Burden*, 228 U. S. 161.) The corporation is forbidden to plead usury. A loan, therefore, to a corporation in place of an individual even though done with intent to avoid the objection of usury, is valid. The corporation is not used as " a cloak to conceal usury " but to legalize and validate the loan. If the borrower takes advantage of the special privileges and limited liability conferred by law upon a corporation, he cannot repudiate the limitation against pleading usury placed by law upon a corporation. (*Stewart* v. *Bramhall*, 74 N. Y. 85; *Rose* v. *Butterfield*, 33 N. Y. 665; *Union Estates Co.* v. *Adlon Const. Co.*, 221 N. Y. 183; *De Moltke-Huitfeldt* v. *Garner & Co.*, 145 App. Div. 766.)

There was no usury in the transaction because the loan was part of a larger contract whereby Salvin advanced to Rieser $15,000, surrendered a valid claim against him for $2,100 with accumulated interest and discontinued, without costs, the pending litigation. (*Flagg* v. *Fisk*, 93 App. Div. 169; 179 N. Y. 590; *Spain* v. *Talcott*, 165 App. Div. 815; *Stillman* v. *Northrup*, 109 N. Y. 473; *Booth* v. *Swezey*, 8 N. Y. 276; *Valentine* v. *Conner*, 40 N. Y. 248; *Matter of Consalus*, 95 N. Y. 340; *Morris* v. *Talcott*, 96 N. Y. 100; *White* v. *Benjamin*, 138 N. Y. 623; Weld on Usury, 99; *Houghton* v. *Burden*, 228 U. S. 161; *Boswerts* v. *Kurghan*, 94 App. Div. 187.)

*Joseph P. Segal* and *I. Gainsburg* for respondents. The payment of usury was proven by clear and satisfactory evidence, and the transaction being concededly a loan, the lender cannot avoid the statute of usury by disguising the borrower and use a corporation as the dummy borrower, instead of the real party. (*Hall* v. *Eagle Ins. Co.*, 151 App. Div. 815; 211 N. Y. 507; *Grannis* v. *Stevens*, 216 N. Y. 583; *Schanz* v. *Sotscheck*, 160 App. Div. 798; 167 App. Div. 202; *Wyeth* v. *Braniff*, 84 N. Y. 627; *Fiedler* v. *Darrin*, 50 N. Y. 437; *U. S.* v. *Del. & Hud. Co.*, 213 U. S. 366; *Booth* v. *Bunce*, 33 N. Y. 139; *Anthony* v. *American Glucose Co.*, 146 N. Y. 407; *Cawthra* v. *Stewart*, 59 Misc. Rep. 38; *Gilbert* v. *Warren*, 19 App. Div. 403; *Schwarz* v. *Sweitzer*, 202 N. Y. 8; *Bliven* v. *Lydecker*, 130 N. Y. 102; *Spain* v. *Talcott*, 165 App. Div. 815.) The defendants are not estopped from setting up the defense of usury. (*Jacobus* v *Jamestown Mantel Co.*, 211 N. Y. 162; *Baker* v. *Union Life Ins. Co.*, 43 N. Y. 283; *Bridger* v. *Goldsmith*, 143 N. Y. 424; *Mervin* v. *Romanelli*, 141 App. Div. 711; *Masten* v. *Olcott*, 111 N. Y. 153; *Empire Trust Co.* v. *Coleman*, 85 Misc. Rep. 312; *Public Bank* v. *Landau*, 147 N. Y. 738; *Schanz* v. *Sotscheck*, 167 App. Div. 302; *Silverstein* v. *Brown*, 153 N. Y. 677.)

McLaughlin, J. This action was brought to foreclose a mortgage on an interest in real estate in the city of New York. The mortgage was for $15,000, which had, by payments, been reduced so that at the time the action was commenced, there was only claimed to be due $2,000 and interest. Two defenses were set up: (a) Usury; and (b) novation. The court at Special Term reached the conclusion that defendants had failed to establish the second defense, but had succeeded upon the first, and directed that the complaint be dismissed upon the merits. From the judgment entered to this effect an appeal was taken to the Appellate Division, where the same was affirmed, two of the justices dissenting. An appeal was then taken to this court.

The sole question presented upon the appeal is whether there is any evidence to sustain the finding that the mortgage sought to be foreclosed was the result of a usurious agreement. If so, the appellants must fail. The decision of the Appellate Division not being unanimous enables us to examine the record for the purpose of ascertaining that fact. (*Heskell* v. *Auburn L., H. & P. Co.*, 209 N. Y. 86; *Hickok* v. *Auburn L., H. & P. Co.*, 200 N. Y. 464.) Such examination discloses the following uncontradicted facts: That the Myles Realty Company is a domestic corporation, with 106 shares of stock, of which defendant Ely J. Rieser owns 104, his wife one and a third person one; that the business of the corporation, so far as appears, was to enable Rieser to take the title to real estate purchased by him in the name of the corporation, then to negotiate loans thereon, and otherwise to manage the same; that in May, 1908, Rieser was the owner of a lease of real estate on Fifty-ninth street in the city of New York; that on that day he borrowed $15,000 from one Bates, for which he gave his bond, payable April 30, 1910, and as collateral security for its payment, gave a mortgage, in which his wife joined, on such leasehold interest; that when the loan fell

due it was paid, but the bond and mortgage were not satisfied, but by agreement between the parties were kept alive and assigned to the Myles Realty Company; that the assignment was recorded and the record title to same was in the corporation from April 29, 1910, to September 1, 1911, when it was assigned and transferred by the realty company to Harry Salvin, plaintiffs' testator, as collateral security for a loan of $15,000 made by him to it. The facts connected with the loan by Salvin were substantially as follows: Sometime prior to September 1, 1911, Rieser sold to Salvin the stock in a corporation and guaranteed that its debts did not exceed a certain amount. Subsequently Salvin claimed that the debts exceeded, by $2,091.94, the amount which had been represented and he, therefore, demanded that Rieser pay him such sum. The demand being refused, an action was brought to enforce the claim. After issue was joined, the matter was sent to a referee to hear and determine. Several hearings were had, but before the case was finally closed, a settlement was arrived at by the terms of which Rieser paid $1,000 to Salvin, the fees of the referee and stenographer, and Salvin loaned to the Myles Realty Company $15,000, as collateral security for the payment of which the realty company assigned the bond and mortgage above referred to, also gave its bond, and Rieser and his wife gave their bond conditioned that if the realty company did not make the payments as provided, they would. Rieser also paid to Salvin, or to a third party for his benefit, $1,000, for making the loan to the realty company.

After a careful consideration of the record I am unable to find any evidence to sustain the following findings:

(1) That when Bates was paid the amount of his loan the bond and mortgage, and the indebtedness covered thereby, were extinguished.

On the contrary, the mortgage was kept alive by agreement between the parties. This is clearly shown by the fact that a satisfaction was not given, but instead an

assignment to the realty company. There is no doubt that a mortgage, when paid, may be kept alive for other purposes, when the rights of creditors and third parties have not intervened. (*Hoy* v. *Bramhall*, 19 N. J. Eq. 563; *James* v. *Morey*, 2 Cow. 246; *Bogert* v. *Bliss*, 148 N. Y. 194.) The assignment to the realty company put the title to the mortgage in it. The delivery of the mortgage, so assigned, at the instigation of the mortgagor, gave it a new vitality and in equity estopped him from asserting to the contrary.

(2) That the payment to Bates was made by Rieser and not by the realty company.

The fact that Rieser held nearly all the stock of the realty company did not destroy its legal entity nor prevent its performing legal corporate acts. It could make the payment to Bates and then, instead of having the mortgage satisfied, take an assignment. The assignment itself recites: " That I, Charles F. Bates   *   *   * in consideration of the sum of Fifteen Thousand (15,000) Dollars   *   *   * to me in hand paid by Myles Realty Company   *   *   * the receipt whereof is hereby acknowledged," have sold, assigned, etc.

(3) That the realty company was a mere dummy and held the title for Rieser.

The realty company had held the title for upwards of a year. The assignment to it had been recorded and there is not a particle of evidence to indicate that it held such title other than for itself. Plaintiffs' witness, Armitage, testified, and his testimony was uncontradicted, that he told plaintiffs' testator, in the presence of Rieser, " It was an old mortgage on the premises; that it had existed there since 1908; that it had been assigned and was owned by the Myles Realty Company and that there was no question as to its validity."

(4) That the loan was made to Rieser and not to the realty company under a usurious agreement by which a bonus of $1,000 was paid to the lender.

The only basis for this finding is the fact that Rieser was president of the realty company, owned nearly all of its stock and that he paid to plaintiffs' testator a bonus of $1,000 for making the loan. The fact that Rieser owned substantially all the stock of the company did not prevent its doing business as a corporation. It had the right to borrow money and if Rieser personally paid a bonus it did not in any way affect the transaction. Before the loan was made, at a stockholders' meeting duly called, a resolution was passed — two-thirds of the stockholders being present — authorizing the realty company to make the loan and to assign the mortgage as collateral security for its payment. The fact that Rieser guaranteed to pay the amount of the loan if the realty company did not, and to induce the making of the loan he paid $1,000, did not, in my opinion, affect the transaction in the least. The realty company was in need of money. An action was pending against Rieser to recover upwards of $2,000, which he ascertained could be settled for $1,000, and in addition thereto a loan could be obtained by the realty company of $15,000. It may very well be he thought this was a good way to end the litigation and obtain the money, but whether he did or not, his acts and purposes did not affect the assignment of the mortgage by the realty company. It received $15,000. The check which the plaintiffs' testator gave for the loan was payable to the realty company's order and the same was collected by it. There is no evidence to show that the realty company was a party to any agreement by which a bonus was agreed to be paid, or that it paid any part of the bonus. It is well settled that to establish usury, evidence must be produced to show a corrupt intent by both the borrower and the lender. (*Hartley* v. *Eagle Ins. Co.*, 222 N. Y. 178; *White* v. *Benjamin*, 138 N. Y. 623.)

The loan was made to the realty company. It was the primary debtor. Rieser was a secondary debtor, having

guaranteed to pay the loan if the realty company did not. By express provision of the statute the realty company could not interpose a defense of usury. (General Business Law, § 374, Cons. Laws, ch. 20.) Rieser stood in no better position than it did. (*Stewart* v. *Bramhall*, 74 N. Y. 85; *Union Estates Co.* v. *Adlon Const. Co.*, 221 N. Y. 183.)

There being no evidence to sustain these findings there is no basis for the conclusions of law that the loan was made upon a usurious agreement, and, therefore, void, and that the mortgage could not be enforced.

The judgments appealed from, therefore, should be reversed and a new trial ordered, with costs to abide event.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, CARDOZO, POUND and ANDREWS, JJ., concur.

Judgments reversed, etc.