## In re ROSENBLATT.

(District Court, E. D. New York.   April 25, 1924.)

No. 10555.

1. **Bankruptcy 482(1)—Attorney for mortgagee, who received payment of lien from trustee, not entitled to fees for services in bankruptcy proceeding.**

It would be contrary to intent of Bankruptcy Act (Comp. St. §§ 9585–9656) if mortgagee's attorney, who received payment of his lien from bankruptcy trustee, should be allowed fees for services in proceeding.

2. **Mortgages 16—Neither lien nor extent thereof need arise as of date of mortgage for future advances.**

Mortgage for future advances is valid, and neither lien nor extent thereof need arise as of date of mortgage.

3. **Bankruptcy 101—Filing petition does not affect rights of assignee of bankrupt's accounts for collection.**

Filing petition effects no change in status of person holding accounts assigned by bankrupt for collection, so far as collection thereof is concerned.

4. **Bankruptcy 188(1)—Assignee of accounts of bankrupt for collection held entitled to lien for legal services rendered after bankruptcy.**

Where, shortly prior to filing of petition, bankrupt assigned accounts for collection under contract whereby assignee advanced 77 per cent. thereof, balance, less collection fees, charges, and necessary legal expenses, to be paid after collection, *held* that, under Bankruptcy Act, § 67d (Comp. St. § 9651), assignee had lien for advances and legal services subsequent to bankruptcy, though extent of assignee's claims could not be ascertained nor fixed when petition was filed.

In Bankruptcy. In the matter of Herman P. Rosenblatt, trading as the Extra Size Waist Company, bankrupt. On trustee's application for leave to reargue motion to confirm report of special commissioner allowing claim of the Manufacturers' Finance Company. Claim of the Manufacturers' Finance Company allowed.

Shortly prior to the filing of the petition, the bankrupt assigned outstanding accounts to the Manufacturers' Finance Company under a written agreement whereby the Finance Company made a present advance of 77 per cent. of the face amount of the accounts. The balance was to be repaid to the assignor after collection of the accounts, subject to discount for collection fees, charges, and any legal expense necessary in the collection thereof. At the time of the bankruptcy there were upwards of $4,500 in outstanding accounts then assigned. The receiver in bankruptcy attempted to collect the accounts. The Finance Company made a motion to restrain the receiver. A stipulation was entered into whereby the Finance Company could collect the accounts then unpaid, and the receiver would hold, subject to the determination of the court, any part of the disputed accounts collected by him.

The Finance Company collected upwards of $3,000 through its attorneys, subsequent to the bankruptcy. The receiver paid over to it enough of the funds in his hands from the disputed accounts to equal the face amount of the advances made by the Finance Company. He refused to pay the sum of $350 claimed by the Finance Company as a necessary legal expense for collecting the accounts, subsequent to the bankruptcy. The trustee set up the principal defense that the contract was one of pledge, and not of sale; that the lien of the pledgee was restricted to the amount of "present consideration," to wit, the amounts actually advanced by the Finance Company.

The report of the special commissioner held that the contract was valid; that the trustee took title to the same subject to the claims of the Finance

Company; that the contract determined the nature and extent of the claims; that the contract provided for the payment of legal fees necessary in the collection of the account; that this provision was not restricted to legal services rendered prior to the filing of the petition in bankruptcy. The claim of the Manufacturers' Finance Company for $350 was allowed, and the trustee directed to pay the same from the collected accounts held by him.

Arthur Mayer, of New York City, for trustee.

Leo Oppenheimer, of New York City, for Manufacturers' Finance Co.

GARVIN, District Judge (after stating the facts as above). This is an application by the trustee in bankruptcy for leave to reargue a motion (heretofore granted) to confirm a report of a special commissioner. The trustee relies upon Matter of Murcott Steel Products Co., 2 Am. Bankr. Rep. (N. S.) 153, 294 Fed. 84, and Mobile Chair Mfg. Co. (D. C.) 245 Fed. 211, in addition to other authorities cited. The former decision holds that a clause in a mortgage, whereby the mortgagor promises to pay "all charges touching the same and the keeping and sale thereof," does not justify a construction that it was intended to include counsel fees as one of the charges.

In the Matter of Mobile Chair Mfg. Co. the District Court in Alabama disallowed an attorney's fee which was expressly included in the terms of the mortgage. That decision is based upon two grounds. The court finds, first, that the services were contingent, as they would not in any event be necessary until after the execution of the mortgage, and that such fees were not preserved under section 67d of the Bankruptcy Act (Comp. St. § 9651), as a "present" consideration. The court further holds that the intention of the parties was to create a claim for legal services which would be necessary in collecting the funds secured by the mortgage; that a collection from the trustee in bankruptcy was never contemplated by the terms of the mortgage. In the last paragraph of the opinion the court held that the proceeding came within the ruling of the Circuit Court of Appeals of that circuit (Fifth Circuit) in the Matter of Roche, 101 Fed. 956, 42 C. C. A. 115, and Gugel v. New Orleans National Bank, 239 Fed. 676, 152 C. C. A. 510. Therefore the District Court could not be held to have declined to follow the Circuit Court of Appeals in the other decisions.

In the Matter of Roche the Circuit Court of Appeals determined that a provision in the mortgage obligating the mortgagor to pay attorney's fees in the event of foreclosure proceedings could not be considered as an obligation to pay attorney's fees in collecting the amount due thereunder from a trustee in bankruptcy, holding that the court must follow the intention of the parties as shown by the mortgage. It held, in effect, that the contingency contemplated by the parties as a basis for attorney's fees never took place; that the attorney's fees never matured, and hence could not be chargeable against the estate of the bankrupt. In the case of Gugel v. New Orleans Bank the court distinctly decided that a provision in the mortgage allowing an attorney's fee was not binding upon the trustee in bankruptcy, the opinion stating:

"There were no legal proceedings instituted on the note or mortgage before the petition in bankruptcy was filed or thereafter. The sale free from liens in the bankruptcy court was not the equivalent, in this respect, of a foreclosure by the mortgagee of the mortgage lien."

[1] The special commissioner, whose report is before the court, pointed out that no legal services were rendered by the attorney in the Mobile Chair Case or the Gugel v. New Orleans Case, prior to the petition in bankruptcy. No legal services were necessary after the petition was filed, except in the bankruptcy proceedings. It would be contrary to the intent of the Bankruptcy Act (Comp. St. §§ 9585–9656) if an attorney for a mortgagee, who received payment of his lien from the trustee in bankruptcy, should be allowed attorney's fees for services rendered in the proceeding.

[2] If the construction by the trustee of section 67d were accepted, it would be difficult to determine upon what grounds the validity of a mortgage given for future advances is to be recognized. At the time such a mortgage is given no consideration passes. Advances are made thereafter. Certainly it cannot be argued that the lien attaches the day the mortgage is given, because on that date there is only the agreement to make advances, but no actual consideration in the sense of property passing to the mortgagor. And as set forth by Judge Rogers in the Matter of Locust Building Co., Inc., Bankrupt (C. C. A. April 7, 1924), 299 Fed. 756:

"It certainly will not at this late day be contended that a mortgage to secure future advances cannot be made. A mortgage of that kind was valid at the common law. Gardner v. Graham, 7 Vin. Abr. 22, pl. 3. It is believed that such a mortgage is valid throughout the United States, except where it is forbidden by the local law. The courts of New York, in which the mortgages in question were made, recognize the validity of such mortgages. Ackerman v. Hunsicker, 85 N. Y. 43, 39 Am. Rep. 621; Brinkerhoff v. Marvin, 5 Johns. Ch. 320. And they have been sustained in the Supreme Court of the United States. Jones v. Guaranty & Indemnity Co., 101 U. S. 622, 25 L. Ed. 1030."

This authority is quoted to show that neither the lien nor the extent thereof need not arise as of the date of the mortgage. But any consideration of decisions in reference to mortgages only tends to confuse the present issues. As soon as a petition in bankruptcy is filed, the custody of the property is transferred to the bankruptcy court. The mortgagee can apply to that court for payment of his lien. To allow an attorney's fee for so doing would be practically granting "costs" in a bankruptcy proceeding.

[3] A petition in bankruptcy effects no change in the status of a person holding accounts assigned to him by the bankrupt, so far as the collection thereof is concerned. It is true that he may depend upon the trustee to collect the funds from the debtors and pay them over to him. But, at best, this is a choice of remedies, which is usually not desired. A trustee in bankruptcy would have no special incentive to collect debts and pay them over to the assignee of the accounts. The assignee must either take this remedy or collect the accounts himself, using whatever legal services may be necessary in the collection thereof. The intention of the parties at the time the contract was made is clearly shown in the agreement. It provides for collection by the as-

signee, at his option, with the payment of any necessary legal services rendered therein.

In Boise v. Talcott (C. C. A.) 264 Fed. 61, if the factor's lien had only been allowed to the extent of the present consideration, literally speaking, no allowance could have been made for attorney's fees and disbursements, whether rendered prior to or subsequent to the bankruptcy. And yet Judge Manton expressly allowed the same, stating:

"The items allowed in payment of attorney's fees and disbursements are fully covered by the contract, which provides for the payment of 'all legal expenses and reasonable counsel fees.'"

In the Matter of Farmers' Supply Company, 22 Am. Bankr. Rep. 460, the mortgagees agreed to indorse certain notes of the mortgagor corporation. Upon the strength of their indorsement and in consideration thereof a mortgage was given to them as a protection against liability which might accrue thereon. Subsequently the notes became due and were paid by the indorsers. The record does not show whether the notes were paid prior to or subsequent to the bankruptcy, but the principle is the same. The court recognized the validity of such a mortgage and held as follows:

"If an obligation be assumed upon a valid agreement that the bankrupt will execute a mortgage upon certain specific property to secure the assumed liability, a mortgage executed and delivered in pursuance of such an agreement, within a reasonable time thereafter, is valid, and the liability assumed will be deemed a present consideration for the conveyance"—citing various decisions from District and Circuit Courts.

This decision is another illustration of the fact that the present consideration may only be a liability incurred, as distinguished from a passing of property, and may be wholly contingent.

[4] It is clear, I think, from the foregoing authorities, that the trustee in the present matter has attempted to construe section 67d in such a manner as to impair the validity or completeness of the lien which is expressly recognized by that section. By their nature certain liens are indefinite in amount and contingent. It is impossible to draw a line between those liens definitely ascertained at the time the petition is filed and those liens whose amounts can only be fixed by future calculations or contingency.

In the present matter, as stated by Judge Manton in Boise v. Talcott, supra, the trustee in bankruptcy took only such property in these outstanding accounts as the bankrupt had at the time of the petition, subject to all valid claims, liens, and equities. The fact that the extent of the claims of the Manufacturers' Finance Company could not be ascertained or was not fixed at the time the petition in bankruptcy was filed does not destroy the validity thereof. The claim of the Manufacturers' Finance Company has since been fixed. The sum of $350 now being held by the trustee, as stakeholder, belongs to the Finance Company. It is not part of the estate. The receiver had no right to collect any of the outstanding accounts, except as to the excess or equity above the proper claim of the Finance Company.

The claim of the Finance Company in the sum of $350 appears to be valid and must be paid.