**In the Matter of Joseph CICHANOWICZ, Bankrupt.**

**No. 63 B 635.**

United States District Court
E. D. New York.
Feb. 14, 1964.

Jack Weiss, Bay Shore, Weiss & Nelson, Bay Shore, for petitioner on review.

Albert Sacklow, Mineola, for the trustee.

DOOLING, District Judge.

The learned referee summed the case up as testing whether the chattel mortgage in question was like "the fabled Phoenix which when consumed by fire * * * rises in youthful freshness from its own ashes." He held, upon the objection of the trustee in bankruptcy to the chattel mortgagee's claim to recover the mortgaged property, that it was not, that, although it was security for present and future debts owed to the mortgagee, it nevertheless became "void" by its own terms when the debt was paid down to nothing and that it did not revive when new loans were later made by the mortgagee to the mortgagor.

The decision of the referee must be set aside. The chattel mortgage was intended to be, and could lawfully be, a continuing security for any future loans the mortgagee might make; it has not been shown that any equity available to the trustee intervened before the bank made its final loans on the faith of the chattel mortgage and the bank may, therefore, enforce its security.

The case was submitted for decision on affidavits and exhibits. On March 1, 1960, Petitioner, Franklin National Bank, lent $10,000 to the bankrupt and he gave the bank his notes, a Collateral Loan Agreement under which he pledged "the following property: Chattel Mortgage dated March 1, 1960, covering farm equipment," and the Chattell Mortgage, dated March 1, 1960, (and duly filed and refiled), covering ten pieces of automotive or farm equipment.

The Collateral Loan Agreement recites that it was given to induce the bank to make loans to the bankrupt, and to purchase his notes "and any security documents relative thereto," and to grant the bankrupt such renewals as the bank deemed advisable; it provided that the Chattel Mortgage was given as collateral security for the prompt payment of any and every obligation of and liability of the bankrupt to the bank whether then existing or thereafter incurred and whether then or thereafter owing. The Collateral Loan Agreement further provided that it might be terminated "only by written notice to that effect, relating solely to new obligations of the [bankrupt] subsequently incurred, delivered by the undersigned to the Bank and duly receipted for by it"; upon such termination, the bankrupt was to continue liable on preexisting obligations "and with respect to such obligations and any renewals, extensions thereof or other liabilities arising out of the same," the Agreement was to continue in force.

The Chattel Mortgage, concurrently given and promptly filed, was in the form of a bargain and sale of the scheduled automotive and farm equipment "as security" for the note indebtedness of even date (and renewals and extensions thereof) and "as additional collateral security for the payment of any other obligation or liability * * * of the Mortgagor to the Bank, whether now existing or hereafter arising * * * not exceeding the total amount hereof at any one time." The condition of the Mortgage grant was that if the Mortgagor paid "$10,000 as follows: As described in notes * * * (together with all other sums payable under said notes and hereunder) and all other debts, demands and liabilities secured hereby, as and when the same become due and payable, then this mortgage shall be void."

It appears that the note indebtedness rose to $11,000 and was paid down to nothing on January 31, 1961. There was no debt until, on March 20, 1961, $10,-306.67 was borrowed. From that date forward the indebtedness continued, rising to $20,162.66 in September-October 1961 and ending on March 15, 1963, with a debt of $7,749.99 outstanding.

The Chattel Mortgage was refiled on or about February 4, 1963, when $8,749.99 and interest was stated to be secured by it. The bankruptcy was voluntary and it took place on June 25, 1963. In his schedules bankrupt listed the Franklin National Bank as a secured creditor for $10,000 and in the personal property

schedule listed the automotive and farm equipment as subject to the Mortgage of March 1, 1960, and listed also as a mortgage the refiling of the earlier instrument.

While the Bank made a long series of advances to the Bankrupt, there is no evidence that it was committed or obligated to do so. It must be taken that the making of fresh loans to the bankrupt from time to time was optional with the Bank. It is plain enough, too, that the Bank supposed itself secured and lent on the faith of its supposed security.

■ As the learned Referee said, New York recognizes that a mortgage can validly be given to secure future advances whether the making of the advances is optional or obligatory. Agawam Bank v. Strever, 1859, 18 N.Y. 502; Brown v. Kiefer, 1877, 71 N.Y. 610; Merchants Nat'l. Bank v. Hall, 1881, 83 N.Y. 338. The anomaly of an interminable security, where the security instrument is not self-limiting, is avoided by the implicit power to call a halt to advances (Cf. Merchants Nat'l. Bank v. Hall, supra, 83 N.Y. at page 345); in the present case the Collateral Loan Agreement provided for such a termination.

■■ While it is often said, and is certainly in some sense true, that in New York a mortgage has no validity except as it creates a lien, that there can be no lien without a debt, and that therefore, there can be a valid mortgage and lien only if and so long as there is a debt (Brown v. Guthrie, 1888, 110 N.Y. 435, 442, 18 N.E. 254; Bogert v. Bliss, 1896, 148 N.Y. 194, 42 N.E. 582; Kommel v. Herb-Gner Constr. Co., 1931, 256 N.Y. 333, 337–338, 176 N.E. 413; Cf. In re Rosenblatt, E.D.N.Y.1924, 299 F. 771, 773), the cases are clear that a mortgage will be valid and enforced notwithstanding that at the moment when it was given and recorded no loan had yet been made and only future advances were intended to be secured. Robinson v. Williams, 1860, 22 N.Y. 380, 383; Ackerman v. Hunsicker, 1881, 85 N.Y. 43; Brown v.

Guthrie, supra. And, while it is settled that if the particular mortgage debt identified in a mortgage is unqualifiedly paid, then the mortgage is discharged and is extinguished beyond revival (Bogert v. Bliss, supra); it is equally settled that, by agreement, the parties can preserve the mortgage from extinction and the mortgagor can use it a second time to obtain a new loan. Champney v. Coope, 1865, 32 N.Y. 543 (mortgage extinct as to $1,200 because to that extent paid off unqualifiedly; preserved as security for new loan to the extent of $3,800 because parties to payment stipulated to keep the mortgage alive); Salvin v. Myles Realty Co., 1919, 227 N.Y. 51, 124 N.E. 94, 6 A.L.R. 581; Cf. Application of Cumberland Garage, Inc., Sup., Queens Co. 1947, 73 N.Y.S.2d 571; American Trust Co. v. New York Credit Men's Adjustment Bureau, Inc., 2d Cir. 1953, 207 F.2d 685, 689.

■ Reducing the indebtedness outstanding under the mortgage to zero does not extinguish the mortgage if the parties keep the mortgage alive by agreement, or if the mortgage was given as a continuing security for future loans, and future loans are still in the parties' contemplation. The language in Monnot v. Ibert, Gen'l Term 1859, 33 Barb. 24 to which the learned Referee referred was used in deciding that the chattel mortgage there before the Court, even if so drafted as to secure all future advances made to the mortgagor, did not secure still further loans later made to the mortgagor's successor in business; the Court held that the chattel mortgage was discharged when the last loans made to the mortgagor had been paid. Like the earlier case of Truscott v. King, 1852, 6 N.Y. 147, the Court also distinguished between a mortgage that secures certain specific future loans and a mortgage that secures the balance, up to a stated amount, at any time due on a continuing series of loan transactions. Under the first kind of mortgage, as in Truscott v. King, supra, when loans in the mortgage amount have been made and paid, the mortgage becomes extinct. Under the

second kind, as in Agawam Bank v. Strever, supra, the loans made and repaid may be many times the mortgage limit; the mortgage continues as security for the balance (up to the mortgage limit) from time to time due in the loan account as it turns over and over.

■ The instruments used in the present instance place the chattel mortgage in the second category, that of a mortgage securing, up to a stated amount, the balance from time to time due on a continuing series of loan transactions. The chattel mortgage did not, therefore, become void when no loans were outstanding for a forty-eight day period because by its terms the mortgage secured, at any one time, both existing and future loans and it was by its terms to become void only when all the debts it secured—then future as well as previously made—had been paid. The $10,000 amount, if operative as a security limit at all, referred not to an aggregate of loans but to the amount at any one time outstanding; the language of the grant is that it as security for note and other debt "not exceeding the total amount hereof at any one time." The Collateral Loan Agreement, under which the chattel mortgage was given, is also clear that the security is to stand as a continuing security for liabilities whether then existing or thereafter incurred. If the Chattel Mortgage were unclear, and it is not, the Collateral Loan Agreement could properly be used to elucidate the mortgage although it is not recorded. McKinster v. Babcock, 1863, 26 N.Y. 378; Simons v. First Nat'l Bank, 1883, 93 N.Y. 269; Preston v. Southwick, 1889, 115 N.Y. 139, 149–150, 21 N.E. 1031.

■ What has been said relates to the validity and effect of such a mortgage as between the parties to it. In view of the broad rights of the trustee in bankruptcy under Section 70(a) (5) and 70(c) of the Bankruptcy Act (11 U.S. C.A. § 110(a) (5), (c)), there remains the question whether the mortgage is good as against the trustee, whether, that is, the mortgaged property is, in whole or part, property upon which a creditor of the bankrupt could, at the date of bankruptcy, have obtained a lien by legal or equitable proceedings. After considerable early perplexity (See Truscott v. King, supra, 6 N.Y. at pages 157–158, 161; Monnot v. Ibert, supra, 33 Barb. at page 27), New York has concluded that a recorded mortgage for future advances is good as against judgment creditors who obtain their judgments after the advances in question are made (Robinson v. Williams, 1860, 22 N.Y. 380) and is good also as against a judgment creditor whose judgment is obtained before all the advances have been made under the mortgage, provided that the mortgagee did not know of the judgment—and the mortgagee is not charged with notice by the fact that the judgment is a judgment of record. Ackerman v. Hunsicker, 1881, 85 N.Y. 43. The Ackerman case considered that its rule applied even where the advances made on the recorded mortgage after the entry of the rival judgment were optional, rather than obligatory, in the sense that the mortgagee was not contractually bound to make them. Hyman v. Hauff, 1893, 138 N.Y. 48, 33 N.E. 735 has been considered to indicate that, if optional advances are made on a mortgage securing future advances after the first mortgagee has actual knowledge of a subsequent mortgage for an existing debt or liability, priority will not be accorded to the advances. The case, it seems, did not distinctly hold that, for the Court found that the advances in suit were obligatory and not optional and were secured; the Court seemed to be leaving the optional advances point open and to be saying only that the proposition urged on it broadly in the case could operate only, if at all, in the optional advance context. Matter of Harris, Surr.Ct.1935, 156 Misc. 805, 282 N.Y.S. 571, in any event, limited an optional advances mortgage to the advances made before actual notice of a later entered judgment and Catskill Nat. Bank & Trust Co. v. Saxe, Greene Co. 1940, 175 Misc. 501, 24 N.Y.S.2d 82 reached the same result. New York & Suburban Federal Sav. & Loan Assn. v.

Fi-Pen Rlty. Co., Sup., Westch. Co., Westch. Co. 1954, 133 N.Y.S.2d 33 indicated that optional advances would be secured by a mortgage given to secure future advances only if made before the attaching of the junior lien or encumbrance; the statement was not necessary to the decision and it seems to have overlooked the principle in the earlier cases that advances can be continued until the lender learns of the later lien. Cf. Brown v. Guthrie, 1888, 110 N.Y. 435, 442, 18 N.E. 254. See, generally, Eager, Chattel Mortgages and Conditional Sales, 1941, 48, 669, §§ 41, 42, 520.

█ Since in the present case no date earlier than the date of bankruptcy can be assigned to the lien rights of the trustee as against the Bank (Lewis v. Manufacturers Nat'l Bank of Detroit, 1961, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed. 2d 323; Cf. Hoffman v. Cream-O-Products, 2d Cir. 1950, 180 F.2d 649, 650), it must be concluded that the chattel mortgage is, in principle, good for the amount of the loans, less than $10,000, outstanding with the Bank on the date bankruptcy intervened. Cf. Epstein v. Trade Bank & Trust Co., 2d Cir. 1945, 149 F.2d 261, 263; In re Rosenblatt, supra.

█ The mortgage is not ineffective because the recorded instrument fails to disclose fully the terms of the contract or transaction, including the text and terms of the Collateral Loan Agreement. New York Lien Law, McKinney's Consol. Laws, c. 33, § 230 does not require the filing of the contract as did the Uniform Conditional Sales Act involved in Empire State Chair Co. v. Beldock, 2d Cir. 1944, 140 F.2d 587 and Hoffman v. Cream-O-Products, supra. Cf. Epstein v. Trade Bank & Trust Co., supra, 149 F.2d at pages 262–263. A similar requirement for disclosure of contract terms exists under the Lien Law provisions dealing specifically with chattel mortgages given as purchase money mortgages on goods sold for $3,000 or less (N.Y.Lien Law, §§ 239, 239–i), but the filing requirement here applicable, affecting chattel mortgages generally, requires the filing only

of the security instrument or a copy of it (N.Y.Lien Law, § 230). See Shuler v. Boutwell, Gen'l Term 1879, 18 Hun. 171; Cf. McKinster v. Babcock, supra; Simons v. First Nat'l Bank, supra; Preston v. Southwick, supra.

Accordingly, the order under review is set aside and petitioner bank is entitled to the relief it prayed.

Settle order within ten days on three days notice.