WARNER *v.* FALLON COAL MINES CO.

1. BILLS AND NOTES—DIVERSION OF ACCOMMODATION NOTE—NOTICE —ESTOPPEL.

A stockholder who, at the time he signed a renewal of an accommodation note given for the purpose of financing the corporation, did not know that the proceeds had been diverted, is not thereby estopped from enjoining collection of the note.

2. SAME—RENEWALS—DEFENSES.

As between the original parties, defenses open on the original note are open on renewals, and are also open against a holder who had notice of them when he took the original.

3. SAME—ACCOMMODATION PAPER—SECURITY FOR LOAN OF CREDIT.

A note signed by a stockholder to help finance the corporation is accommodation paper, although he received the company's note as security for the loan of his credit.

4. SAME—FRAUDULENT DIVERSION—NOTICE BY HOLDER—DISCHARGE OF MAKER.

Where a bank, through its cashier, had knowledge that a stockholder's accommodation note, offered for discount, had been given for the purpose of financing the corporation, but, under agreement with the corporation's manager, applied the proceeds to retire worthless notes which were not obligations of the corporation, there was a fraudulent diversion, the effect of which is to discharge the maker from liability.

5. SAME—ACCOMMODATION PAPER—PRINCIPAL AND SURETY.

As between the party accommodated and the accommodation party, the relation, in principle at least, is that of principal and surety, and the surety has the right to choose the terms on which he will become liable, and failure to comply with such terms discharges him.

6. SAME—DIVERSION OF ACCOMMODATION PAPER WITH NOTICE RE-LEASES MAKER.

If accommodation paper is given for a particular purpose, and that purpose is known to the holder at the time it is taken, a

diversion of it from that purpose, or misappropriation of it, will release the party giving the accommodation from all responsibility.

Appeal from Shiawassee; Collins (Joseph H.), J. Submitted January 16, 1929. (Docket No. 161, Calendar No. 33,965.) Decided March 29, 1929.

Bill by Fred G. Warner against the Fallon Coal Mines Company and others to enjoin collection of an accommodation note. From decree for plaintiff, defendants appeal. Affirmed.

*Matthews, Hicks & DesJardins,* for plaintiff.

*H. P. Orr* and *Pulver & Bush,* for defendants.

CLARK, J. The plaintiff filed this bill against Fallon Coal Mines Company, a corporation, Farmers State Savings Bank of Bay City, a banking corporation, and certain individuals, private bankers, trading at Colwood, Michigan, as Seeley, Andrews, Bach & Co., to enjoin collection of his certain negotiable promissory note of $500 and for surrender and cancellation thereof, which last-named defendants filed answer admitting that they held the note, and filed cross-bill praying money decree against plaintiff for the amount due.

The case went to hearing as between plaintiff and the last-named defendants, other defendants being dropped. Plaintiff had decree. Defendants have appealed.

Plaintiff was one of many stockholders in the coal company, which, although it had had proceeds from the sale of capital stock and from a bond issue, was practically insolvent. A stockholder who had visited the mine reported to plaintiff and other stockholders

that "our money was lost—gone." The board of directors of the company, hoping to continue the business, decided to solicit of the stockholders notes in the aggregate of nearly $100,000 to be used to secure needed funds to pay debts and to make necessary changes and improvements at the mine. The stockholders were informed of the plan.

Plaintiff, among others, was requested to give his note for $500 for the use and benefit of the company, which he did. He gave it as a stockholder to help "finance his company." To secure him for giving the note, a note in like amount made by the company was given to him. Plaintiff's note, with a number of other like notes, all in the total principal sum of $10,950, was offered by C. C. Fritz, manager of the coal company, to defendants for discount and accepted. But defendants required that the notes be made on their own blank forms and be made payable to the order of defendants, and they required a certificate of the maker to accompany the note. Accordingly, the first note given by plaintiff was returned to him, and at the request of an officer of the coal company plaintiff made another note for $500 payable to defendants, which note he later renewed, which renewal is the note in question. At the time of giving the second note plaintiff signed the certificate requested by defendants.

"SEELEY, ANDREWS, BACH & COMPANY,
Colwood, (Colling P. O.) Mich.

"Gentlemen: I hereby authorize you to purchase my note for Five hundred dollars, dated August 29th, 1923, given to the Fallon Coal Mines Company due in six months, and agree to take up same when due.
"F. G. WARNER."

Mr. Andrews, defendants' cashier who handled the matter for the bank, knew when he accepted

plaintiff's note and the other notes that they had been made to accommodate the coal company. He testified:

"I knew they were raising money to finance their own company."

Of the particular note of plaintiff he testified:

"My understanding was that he as a stockholder wanted me to buy this note to finance his company."

For the coal company the notes were indorsed for discount. Defendants previously, for Fritz personally or for him as an officer of other companies, had discounted notes, and as a result defendants had considerable "worthless paper" (so correctly characterized by the trial judge). It was agreed between Fritz and defendants' cashier that in the discounting of plaintiff's note and the other notes of the stockholders, in the total principal sum of $10,950, such worthless paper should be taken up.

Accordingly, defendants paid for the notes as follows:

| | |
|---|---:|
| Certificate of Deposit to Coal Co. | $2005.50 |
| "Worthless Paper" 4 notes | 3675.00 |
| Reese Bank | 1500.00 |
| Saginaw Finance Corp. | 1502.90 |
| Fallon note | 1012.05 |
| Whitelaw check | 1012.05 |
| Discount | 242.50 |
| | $10,950.00 |

Perhaps the items, Reese bank, Fallon note, and Whitelaw check, were properly debts of the coal company, although the record is not satisfactory as to at least part of them. As to the item, Saginaw Finance Corp., $1,502.90, the evidence does not show

a debt of the coal company, but it was said to be a
"Fritz deal." The record would sustain a finding
that of the total of the notes of stockholders (in-
cluding that of plaintiff), $10,950, there was a diver-
sion of notes, or of proceeds thereof as plaintiff con-
tends, in excess of $5,000. It is certain that the
diversion was as much as $3,675, the total of the
worthless paper taken up.

It is contended that there was fraud in the incep-
tion of the note of plaintiff, and that defendants are
in that regard not holders in due course, considera-
tion of which we find to be unnecessary. Plaintiff
did not know of the diversion when he signed the
note and the certificate and when he gave the renewal
note in question. He is not thereby estopped.

As between the original parties, defenses open on
the original note are open on renewals, and are also
open against a holder who had notice of them when
he took the original. *Anderson* v. *Engard,* 236 Mich.
221; *Adams* v. *Ashman,* 203 Pa. 536 (53 Atl. 375).

Plaintiff's note was made for accommodation of
the coal company. It was accommodation paper.
3 R. C. L. p. 1137. And that is true although he re-
ceived the note of the coal company as security for
the loan of his credit. 8 C. J. p. 255. Plaintiff gave
the note to help finance the coal company. As a
stockholder he was interested in its success, and to
that end he was interested that his note and its pro-
ceeds be not diverted from the use agreed upon—
that the purpose of giving the note be not thus frus-
trated. He has shown substantial interest to sup-
port his contention of diversion, if that be neces-
sary, as some authorities suggest. There was here
a fraudulent diversion, made at the instance of the
cashier of defendants' bank, for which defendants
are responsible, and made with knowledge of the

facts respecting the accommodation. So using plaintiff's note in very considerable part at least and in common with the other notes to retire the worthless notes which were not obligations of the coal company was a fraudulent diversion, the effect of which is to discharge plaintiff from liability on his accommodation note.

The reason for this is that as between the party accommodated, the coal company, and the accommodation party, the plaintiff, the relation, in principle at least, is that of principal and surety, and the surety has the right to choose the terms on which he will become liable, and a failure to comply with such terms discharges him. 1 Am. & Eng. Enc. Law (2d Ed.), 371–379. In *Farley National Bank* v. *Henderson,* 118 Ala. 441 (24 South. 428), it was held:

"Accommodation paper is a loan of credit by the accommodation party to the party accommodated to the extent of the value of the paper. *Prima facie* it is without restriction as to the manner of its use, and the accommodated party may use it for any legal purpose, and when thus used, and in the hands of a *bona fide* holder, in due course, for value, it becomes precisely what on its face it imports, and is no less binding on the accommodation party because of its character as accommodation paper. But one who thus lends his credit may undoubtedly do so upon such terms and conditions as he sees fit, and may impose restrictions upon the use to be made of the paper or its proceeds. When such restrictions are imposed, whoever takes the paper with knowledge that the terms and conditions upon which the accommodation was given are being violated; whoever participates in the diversion of the paper to other objects or uses than such as were intended when the paper was made, unless fraud is imputed, must be understood to relieve the party giving the accommodation from all liability."

In *Fay & Co.* v. *Jenks & Co.*, 93 Mich. 130, a note of the defendant, a corporation, for past indebtedness was given to the plaintiff and indorsed for accommodation by two of defendant's stockholders, who indorsed in reliance upon a contract that defendant was to have the exclusive sale of plaintiff's machinery in Michigan, and who defended on the ground that the contract had been violated. The court said:

"Upon this assurance (exclusive sale) the indorsers had a right to rest. It can make no difference as to the extent of sales in violation of this condition of the agreement. If such sales were made without the consent of the indorsers, and without any subsequent waiver of their rights under the contract, courts will not stop to inquire into the amount of damage that may have been done by such sales. The fact that one sale has been made violates the contract, and destroys the condition upon which the indorsements were made, and releases the sureties."

We quote syllabus from *United States National Bank* v. *Ewing,* 131 N. Y. 506 (30 N. E. 501, 27 Am. St. Rep. 615):

"A surety has the right to impose any limit he may choose upon his liability; he may fix the precise terms upon which he is willing to become a surety, whether those terms seem to be material or immaterial, and may not be held liable outside of those terms."

And same from *Benjamin* v. *Rogers,* 126 N. Y. 60 (26 N. E. 970):

"A transferee of negotiable paper who takes it knowing that it was executed by an accommodation maker, and was transferred in violation of conditions or limitations imposed by such maker, cannot maintain an action thereon against him."

And same from *Olds Wagon Works* v. *Bank of Louisville,* 10 Ky. Law Rep. 235:

"If accommodation paper is given for a particular purpose, and that purpose is known to the holder at the time it is taken, a diversion of the paper from that purpose, or misappropriation of it, will release the party giving the accommodation from all responsibility."

And same from *Lay* v. *Wallace,* 106 Ark. 458 (153 S. W. 601):

"Where appellants executed an accommodation note with M. for a specific purpose, and it appears that M. materially diverted the note from its original destination, the holder of the note can not recover upon it against the accommodation makers, unless he receives it in good faith, without notice, and for value.

"Where appellants signed a note as accommodation with one M., with the express understanding that M. was to use it in the purchase of a span of mules from one T., and give appellants a mortgage on the mules, and instead, M. used the note in the purchase of two horses from one K., over appellants' protest, and the appellee became the holder of the note after maturity, with knowledge that the note was an accommodation note, *held,* appellee can not recover on the note from the accommodation makers."

See, 1 Joyce, Defenses to Commercial Paper (2d Ed.), chap. 17; 1 Daniel on Negotiable Instruments (6th Ed.), § 792; 1 Am. & Eng. Enc. Law (2d Ed.), 383; 8 C. J. p. 282; Bigelow's Bills and Notes (2d Ed.), 456.

It follows that decree is affirmed, with costs to plaintiff.

North, C. J., and Fead, Fellows, Wiest, McDonald, Potter, and Sharpe, JJ., concurred.