## RAMSOUER v. MIDLAND VALLEY R. CO.
### No. 11 Civil.

District Court, W. D. Arkansas, Fort Smith Division.

Feb. 17, 1942.

524.

R. A. Young, Jr., of Fort Smith, Ark., James D. Gibson, of Muskogee, Okl., and H. L. Smith, of Tulsa, Okl., for defendant.

MILLER, District Judge.

On November 4, 1938, plaintiff, as the surviving widow of Edward E. Ramsouer, filed her complaint seeking judgment for damages alleged to have been sustained by plaintiff on account of the death of her husband while in the discharge of his duties as an employee of the defendant. The plaintiff alleged that on January 10, 1937, the deceased was assisting the defendant in setting out a car of merchandise on a side track adjacent to the loading dock of the Osage Flour & Feed Company in Pawhuska, Oklahoma; that "in so doing when and where by reason of the negligence and carelessness of the defendant, the nature of which is unknown to the plaintiff and unascertainable by her, said car of merchandise was caused to leave the rail of said switch track upon which it was being moved and run against, upon and over said Edward E. Ramsouer, as a direct result of which he was injured— from which injuries the said Edward E. Ramsouer died on January 20, 1937".

On February 16, 1939, plaintiff filed her first amended complaint in which similar allegations were made and also, "that said decedent, Edward E. Ramsouer, was merely a brakeman or switchman and performing the usual and ordinary duties of such for defendant when he was injured, and that it was not his duty to inspect, repair or maintain said track, engine, train or the cars composing the same, including the car of merchandise aforesaid, and that he had nothing to do with any such inspection, repair or maintenance, but that said track, roadbed, engine, train, and cars, were under the exclusive supervision and control of the defendant and not of this plaintiff's decedent and that the derailment hereinabove referred to was such a casualty as would not ordinarily occur but for the negligence of the defendant."

On June 22, 1939, the plaintiff filed a second amended complaint containing allegations similar to those in the complaint and the first amended complaint, but more specific as to the time and place of the injury. Plaintiff also alleged, "when and where by reason of the negligence and carelessness of the defendant, the nature of which is unknown to the plaintiff and unascertainable by her, said car of merchan-

Fadjo Cravens, of Fort Smith, Ark., and Clarence C. Chilcott, of Kansas City, Mo., for plaintiff.

dise while being so moved, was caused to leave the rail of said switch track and move in the direction of decedent and said dock at approximately where decedent was standing and to run against, upon and over decedent", etc.

Answer was filed by the defendant to the first amended complaint on May 29, 1939, and to the second amended complaint on December 21, 1939; on June 3, 1940, amended answer to second amended complaint was filed. The defendant denied that the injuries to the deceased were caused by any negligence on the part of the defendant or any of its agents and servants and alleged contributory negligence and assumption of risk on the part of the deceased.

On August 22, 1940, motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, was filed.

On February 18, 1942, a pre-trial conference was held, at which time counsel for plaintiff and defendant stipulated that the suit is based upon the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60, and that at the time of the injury to the deceased he and the defendant were engaged in interstate commerce.

The record discloses that the plaintiff on April 6, 1937, commenced an action in the District Court of Tulsa County, Oklahoma, seeking a recovery on the identical cause of action set forth in the second amended complaint filed herein; that in said case the plaintiff took depositions of twenty-two witnesses, nine of them being employees of the defendant and one of them being a physician representing the defendant as local surgeon at Pawhuska, Oklahoma; that the case was tried in the District Court of Tulsa County, Oklahoma, and in addition to the witnesses whose depositions had been taken the plaintiff had two other witnesses; that the facts and circumstances existing at the time of the injury were fully developed in said trial and at the conclusion of said trial the trial court indicated that it would sustain a demurrer to the evidence offered by the plaintiff, whereupon the plaintiff moved to dismiss said case and the same was dismissed without any ruling by the District Court of Tulsa County on the evidence in said case.

Prior to the hearing on the motion for summary judgment and in support thereof, the defendant was permitted to file the depositions of the witnesses which had been taken by the plaintiff and in addition thereto the defendant was permitted to file a transcript of the ore tenus testimony of six witnesses, including the plaintiff who had testified in the District Court of Tulsa County, Oklahoma, upon the trial of said case in that court.

During the hearing on the motion for summary judgment and near the conclusion of the same, the plaintiff asked permission to file affidavits of Josephine M. Ramsouer, the plaintiff, O. W. Henson and Thomas Bradley, which the court permitted the plaintiff to file. At the conclusion of the hearing on the said motion the court ordered the parties herein to file briefs, which has been done.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law".

On such a motion the court is not authorized to decide an issue of fact, but is to determine whether the pleadings and record before the court creates an issue of fact to be tried. If the depositions, admissions on file, and affidavits and pleadings raise any question of credibility of witnesses or weight of evidence, the motion should be overruled, and courts should proceed with care in order that this procedure be not perverted to the trial of disputed questions of fact upon affidavits. However, where there is no genuine issue of fact the court is required by Rule 56(c) to render summary judgment in favor of the moving party if such party is entitled thereto as a matter of law. Moore's Federal Practice, Volume 3, pages 3184, 3185. See also additional text and cases cited in 1941 Cumulative Supplement, pages 3184–3185.

The question before the court is whether there is a genuine issue as to any material fact. If there is no such issue then summary judgment should be rendered. This rule has been invoked in numerous cases. It is impossible to state a general rule for determining whether a genuine issue of fact exists in a particular case. The determination in each case must

depend upon the particular facts and circumstances of the case. So it is in the instant case, and the court has examined with care the pleadings, depositions and transcript of the oral testimony given by plaintiff and her witnesses at the trial in the District Court of Tulsa County, Oklahoma, as well as the affidavits which the plaintiff was permitted to file herein at the conclusion of the hearing on the motion. The court has also been favored with most excellent and thorough briefs by counsel for both plaintiff and defendant.

The motion having been filed by the defendant, it has the burden of showing uncontrovertible facts that as a matter of law there is no issue as to any material fact. Judge Reeves of the District Court for the Western District of Missouri in the case of Clair et al. v. Sears Roebuck and Company, 34 F.Supp. 559, correctly stated the rule as follows: "A summary judgment upon motions of this character should never be entered, save in those cases where the movant is entitled to such beyond all doubt. The facts conceded should show with such clarity the right to a judgment as to leave no room for controversy or debate. They must show affirmatively that plaintiff would not be entitled to recover under any and all circumstances."

If the court is clearly convinced from the record before it that if the action were permitted to go to trial, a verdict would necessarily be instructed for the moving party, summary judgment should be granted.

The Federal Employers' Liability Act, 45 U.S.C.A. § 51, provides that every common carrier by railroad while engaged in commerce between the several states "shall be liable in damages to any person suffering such injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment".

In this case negligence cannot be inferred merely from the occurrence of an accident. It must be proven and the burden of establishing negligence is on the party who alleges it. Kansas City Southern Ry. Co. v. Cook, 100 Ark. 467, 140 S.W. 579; St. Louis I. M. & S. Ry. Co. v. Steel, 129 Ark. 520, 197 S.W. 288; Midland Valley R. R. Co. v. Fulgham, 8 Cir., 181 F. 91.

This action is based on the alleged negligence of the defendant and plaintiff can recover only upon that theory. The second amended complaint which superceded the original and the first amended complaint alleges that the negligence of the defendant was unknown to the plaintiff and unascertainable by her. The contention is therefore made that the doctrine of res ipsa loquitur applies.

In Dierks Lumber and Coal Company v. Brown, 8 Cir., 19 F.2d 732, 735, the court said: "This rule does not relieve the plaintiff from the burden of showing negligence, and does not shift the burden of proof in the case. The presumption arising from the circumstances may be sufficient to take the case to the jury, unless the entire evidence is such that the presumption cannot stand against it."

The res ipsa loquitur doctrine may apply to suits under the Federal Employers' Liability Act and in the determination of this motion, full effect must be given to the inference created by proof of the derailment of the railway car which caused the death of the deceased. Unless the entire evidence is such that the presumption cannot stand against it, the motion should be overruled, but if the testimony and record before the court is such as to clearly rebut the presumption and furnish an explanation of the injury, then the motion should be granted. Terminal Railroad Association of St. Louis v. Staengel, 8 Cir., 122 F.2d 271, 136 A.L.R. 789.

In 35 American Jurisprudence, 924, it is said: "Assuming the application of the rule res ipsa loquitur in its strict and distinctive sense to the master and servant relationship, the mere fact, standing alone, that an injury is caused by a derailment is not ordinarily sufficient to call the rule into operation, since it does not reasonably repel the inference that it may have been due to the negligence of the injured serv-

ant himself or a fellow servant, or to a risk which had been assumed."

In Southwestern Gas and Electric Company v. Deshazo, 199 Ark. 1078, 138 S.W. 2d 397, 402, the court said:

"This court is committed to the theory announced in 45 C.J. 1206, sec. 774 C: '* * * the presumption or inference arising from the doctrine cannot be availed of, or is overcome, where plaintiff has full knowledge and testifies as to the specific act of negligence which is the cause of the injury complained of, or where there is direct evidence as to the precise cause of the accident and all the facts and circumstances attendant upon the occurrence clearly appear.'

"The same announcement in principle is made upon the subject of negligence in 20 R.C.L. 156. We think it may be announced that the only instance in which the rule of res ipsa loquitur applies must be that the act or thing causing the injury must have been under the exclusive control and management of the one charged and it will not apply except when the occurrence must be such as in the ordinary course of events it does not happen when due care has been exercised. In such instances it is said a rebuttable presumption arises that there was negligence on account of which plaintiff may recover, unless the defendant, or one charged offers evidence to meet and offset or rebut the presumption. But in all cases where all the facts attending the injury are disclosed by the evidence and nothing is left to inference, certainly no presumption can be indulged."

A plaintiff is not deprived of the benefit of the doctrine because of the introduction of evidence which does not clearly establish the facts or leaves the cause of the accident in doubt. An unsuccessful attempt on the part of the plaintiff to show specific acts of negligence which caused the injury does not necessarily weaken or displace the presumption of negligence on the part of the defendant arising from the facts of the case by virtue of the rule of res ipsa loquitur. 45 C.J. 1206, 1207, Section 774(c).

Here the facts are not in dispute and are established by the testimony of witnesses produced by plaintiff either in person or by deposition at the trial in the District Court of Tulsa County, Oklahoma, which testimony is now before this court in support of the motion. The facts are as follows:

On January 10, 1937, the deceased, Edward E. Ramsouer, was a member of the train crew of the defendant engaged in moving freight in interstate commerce. The train crew consisted of conductor McElwee and brakeman Kendall and the deceased. The deceased was an experienced brakeman and was the list man, that is, he carried the switch list showing where the particular cars were to be set and directed the setting of cars upon the arrival of the train at a station. When the train arrived at Pawhuska, Oklahoma, the deceased proceeded to the setting or spotting of cars in various places in the yards at Pawhuska. The list called for the spotting or setting of a car at the dock of the Osage Flour & Feed Company. This dock or loading platform was approximately forty-two inches high and forty-two inches from the track. At the time the ground and tracks were completely covered with snow and ice. At the time the accident occurred the engine had attached to it five cars and was backing in on the track in question to set the east or end car at the dock of the Osage Flour & Feed Company. This was about 11:30 A. M. The deceased and brakeman Kendall had taken the car to this track earlier that morning, but concluded that they could not place the car at the dock because of the snow and ice and that the track was not safe because of the ice. They therefore directed that the car be returned to the yard and this was done. Immediately prior to the happening of the accident the depot agent requested that the car in question be placed at the dock and, accordingly, the car was brought back from the team track to the track in question. The track was on a curve and the engineer could not see the man at the rear or near the car that was to be spotted or set. The deceased walked along beside the car while conductor McElwee stood at a street crossing just west of the dock, receiving signals from the deceased and passing them to brakeman Kendall who was near the engine and who in turn passed the signals to the engineer. The car was being moved at a speed of about two or three miles per hour.

The deceased had set cars to the dock in question many times before this date. At this particular time he was walking beside the slow moving car, stooping over

watching the wheels. While the car was being moved across the street, the rear trucks or wheels left the track because of the snow and ice and ran a short distance before coming back upon the rails. About the time the rear wheels came back upon the track the car had proceeded to near the dock or loading platform when the front wheels left the track and moved toward the loading dock or platform and caught the deceased, Ramsouer, between the car and the loading platform or dock and inflicted the injuries from which he died on January 20, 1937.

The deceased was directing the movement of the car and was fully advised of the condition of the track caused by the snow and ice.

There is a conflict in the testimony with reference to whether the deceased in spotting cars at this particular dock or platform ordinarily went upon the dock or platform or walked between the car and the platform, but on this occasion he was walking in a stooped position between the platform and the moving car, watching the wheels of the car. He evidently took this position because of the presence of the snow and ice on the tracks.

The derailment of the car was caused by the snow and ice on the tracks.

The conductor, McElwee, was in charge of the train, but ordinarily had nothing to do with the spotting or setting of cars. At this particular time he was directed by the deceased to take a position at the street crossing and receive signals from him as the car moved in on the platform or loading track.

■ The car that caused the injury was under the control and management of the defendant, but the defendant was acting through the deceased, Ramsouer, and the other members of the train crew. At the time the car was derailed it was under the control and management of the deceased as the agent of the defendant. The deceased was an experienced brakeman and knew and appreciated the dangers attendant upon the movement of the car. The deceased possessed all the knowledge of the existing conditions that anyone possessed at that time and the testimony so reflects. In such a case a presumption of negligence cannot be indulged from the mere derailment of the car, because the facts showing the cause of the derailment clearly and uncontrovertibly appear.

Nothing is left to inference. The precise cause of the derailment is shown by the facts which appear in the record and in support of the motion. The facts control and any presumption of negligence vanishes entirely in the presence of the facts disclosing the manner in which the accident occurred.

The plaintiff bases her claim entirely upon the allegation that the nature of the negligence and carelessness of the defendant is unknown and unascertainable by her, and that the deceased, Ramsouer, was merely a brakeman acting within the scope of his duties as such when he was injured; that it was not his duty to inspect, repair or maintain said track and that he had nothing to do with the inspection, repair or maintenance of the track; that the track, road bed, engine and cars were under the exclusive supervision and control of the defendant and that the derailment of the car was such a casualty as would not ordinarily occur but for the negligence of the defendant.

■ The testimony produced by the plaintiff and now properly before the court discloses exactly how the injury occurred. The proximate cause of the derailment of the car is definitely shown; the position of the deceased at the time and the action of every employee of the defendant is revealed by the testimony. In the face of these facts plaintiff makes no specific allegation of negligence, although in the brief filed herein learned counsel for plaintiff hint that the injury might have been occasioned by the negligence of either the depot agent, Mason, or the conductor, McElwee. No request was made by the plaintiff to amend her second amended complaint. She has chosen to stand upon the contention that the derailment of the car creates such a presumption of negligence as would sustain a judgment in her favor. In my opinion the evidence and facts are such that the presumption arising under the doctrine of res ipsa loquitur cannot stand.

The affidavits filed by plaintiff do not aid her. They only tend to show that deceased knew all there was to be known about the conditions existing at the time of the accident.

■ It is not necessary to discuss the allegations made by the defendant of contributory negligence and the assumption or risk by the deceased since the facts proven

530

by plaintiff herself completely destroys the presumption of negligence relied upon by her, but Section 4 of the Federal Employers' Liability Act, 45 U.S.C.A. § 54, permits the assertion of the common law doctrine of assumption of risk except in cases where "the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

It is not contended that any statute enacted for the safety of employees was violated by the defendant or that the violation of any such statute contributed to the injury and death of the deceased. The deceased assumed all ordinary risks of his employment and the extraordinary risks which he knew or appreciated or which by the exercise of ordinary care could have been known and understood by him. It is clear that the deceased fully appreciated the danger attendant upon the work in which he was engaged. It was obvious to one of his experience that the spotting or setting of this car was a dangerous operation and he assumed the risk involved.

The motion is sustained and judgment for defendant will be entered in accordance with the above.