10 N.J. Super. 295 (1950)
77 A.2d 295
EMANUEL FINE, TRADING AS WORMSER & COMPANY, PLAINTIFF,
v.
H. KLEIN, INC., A CORPORATION OF NEW JERSEY, HARRY KLEIN AND TESSIE B. KLEIN, DEFENDANTS.
Superior Court of New Jersey, Essex County Court Law Division.
Decided December 7, 1950.
*296 Mr. Sidney Krieger, for the plaintiff.
Mr. Max L. Rosenstein (Mr. Samuel R. Blaine, appearing), for the defendants.
HARTSHORNE, J.C.C.
Plaintiff sues defendant corporation on a series of promissory notes, of which the individual defendants are endorsers. These notes contain acceleration-on-default clauses, provide for 15% attorneys' collection fees, and were, in part at least, secured by a chattel mortgage.
The defendant, among other defenses, has pleaded that of usury. In reply, plaintiff relies on the so-called corporate usury statute, which provides: "No corporation shall plead or set up the defense of usury to any action or suit brought against it to recover damages or enforce a remedy on any obligation executed by said corporation." R.S. 31:1-6. Plaintiff moves to strike the usury defenses.
This statute has been the subject of much litigation, as have its analogues in other jurisdictions. But the leading *297 decision thereon in this State is that of our highest court in Lembeck v. Jarvis Terminal Cold Storage Co., 70 N.J. Eq. 757 (E. & A. 1905), where the purpose of the statute is stated as follows: "It is obvious, however, that the statute was passed to protect those that had made loans of money and had taken the paper or bonds of a corporation." This decision was shortly followed by that in Mazarin v. Hudson County R.E. & B. Co., 80 N.J.L. 35 (Sup. Ct. 1910), where the court said: "In view of the uniform legislative policy of the state in the matter of usury, the words `obligation executed' by a corporation refers to corporate obligations in the sense of bonds, mortgages, debentures and the like that go on the market and into the hands of the public. It is not rational to suppose that the legislature intended to go further and weaken its public policy against usury by the construction that would make `obligation' apply to an agreement to pay a usurious commission to an agent. The words `obligation executed' in the context do not lend themselves naturally to such a meaning."
Had plaintiff's suit here been upon a mortgage or a bond, such as were involved in the Lembeck case, supra, clearly the statute would apply, and the defense of usury should be stricken. Note also the following mortgage cases to the same effect: Silberman v. Isaac Cades, Inc., 107 N.J. Eq. 575 (E. & A. 1930); Richmond Bldg., &c., Ass'n. v. Aurora, &c., Corp., 9 N.J. Misc. 1015 (Ch. 1931); General Motors Acceptance Corp. v. Larson, 110 N.J. Eq. 305 (Ch. 1932); Heilos v. State Land Co., 113 N.J. Eq. 239 (Ch. 1933).
But since the proceedings here are on promissory notes, even though secured originally by chattel mortgage, defendant claims the statute does not apply, and the defense of usury can be raised. More narrowly, therefore, the issue is whether a corporate promissory note is an "obligation executed" by said corporation within the meaning of the statute.
No decision by the courts of this State on this point involving corporate promissory notes has been brought to the attention of the court. In Seacoast Real Estate Co. v. American Timber Co., 89 N.J. Eq. 293 (Ch. 1918), the note in question was a personal, not corporate, one, the only corporate instrument *298 involved being a deed. In Ovsiovitch v. Federal Tool and Mfg. Co., 94 N.J. Eq. 744 (E. & A. 1923), while promissory notes secured by a chattel mortgage were involved, our highest court in reversing the Court of Chancery, expressly passed the question as to whether the statute covered promissory notes, holding that the statute did apply to the chattel mortgage there involved. Since the chattel mortgage originally involved in the case at bar has been foreclosed, defendant apparently contends that the Ovsiovitch decision is inapplicable. However, the New Jersey statute has been held to apply to corporate notes in two cases, one decided by the Third Federal Circuit Court of Appeals, one by the New York Supreme Court. In re Tastyeast, Inc., 126 F.2d 879 (C.C.A. 3rd 1941); Ollendorf v. Lissberger, 28 N.Y.S. 2d 455 (N.Y. Sup. 1941).
In the absence of a controlling decision, the purpose of the statute should, therefore, be examined to reach a conclusion as to its true meaning. In 1902, when the statute was adopted, the transaction of the business of this country in the corporate form was, compared to the present, in its infancy. The underlying purpose of the statute doubtless was not to have this infant method of conducting the business of the country starved out by depriving it of the essential nourishment of credit, through the public's fear of purchasing corporate "paper," if affected by the defense of usury. This purpose was succinctly stated by our highest court in the Lembeck case, supra, in saying that the statute applied to corporate "paper or bonds."
But while corporate "paper or bonds" thus constitute "obligations executed by said corporation," to which the statute alludes, it is equally clear that corporate instruments other than negotiable paper, bonds, or corporate securities underlying them, such as mortgages, were not intended to be covered by the statute, since, as to these others, the defense of usury would not endanger corporate credit, and, therefore, the public policy of prohibiting usury should be continued. Accordingly, the Mazarin case, supra, held that the statute did not cover a corporate agreement to pay a brokerage commission. Identic is the decision of our highest court in Grossman v. Calonia *299 Land and Imp. Co., 103 N.J.L. 98 (E. & A. 1926), in which the court repeated the above language of the Lembeck case, supra.
Nor is it material whether the corporate "paper" in question had in fact remained in the hands of the original creditor, or had come into the hands of the public on the market. This is made clear by the decision of our highest court in the Ovsiovitch case, supra. For, in that case the Court of Chancery held that the statute did not apply to the notes there in question, and that usury could be pleaded because such notes were in the hands of their original holder, the transaction thus being "of a private nature." The lower court thus interpreted the Mazarin case, supra, as holding the test to be whether the corporate paper had in fact gone on the public market, not what its intrinsic character was. That this was not the holding of the Mazarin case, or the law, is made clear by the fact that our highest court reversed the Court of Chancery in its above opinion. The true test thus is whether, as the Mazarin case says, the instruments in fact are "corporate obligations in the sense of bonds, mortgages, debentures and the like."
In addition, the "debentures" which the Mazarin case, as approved by the Court of Errors and Appeals in both the Ovsiovitch and Grossman cases, supra, holds are covered by the statute, are clearly promissory notes, i.e., promises to pay, which intrinsically are not secured. "A debenture is a debt; an acknowledgment of a debt * * * They may be simple acknowledgments or promises to pay like promissory notes." Words and Phrases, vol. 11, "Debenture," citing many cases. Indeed, the normal distinction between a corporate bond and a corporate debenture or note, is that the former is usually secured by a mortgage, while the latter usually is not. Thus, the promissory notes at bar are intrinsically not secured, though they were secured separately by a chattel mortgage. They thus are included in "debentures and the like," held by the several above cases to be covered by the statute.
Furthermore, since there is no question under the above cases that the statute covers the chattel mortgage, which *300 originally secured the promissory notes in question, the above cited cases show that the corporate defendant could not plead the defense of usury to such mortgage. Thus, in this very case where defendant corporation seeks credit on the notes for the surplus from the foreclosure of such mortgage, it cannot charge the amount of the usury against such surplus. Surely it would be anomalous for the court accordingly to refuse to consider the amount of the usury in applying this surplus as a credit to the notes, and then to hold to the contrary, that the amount of the usury must be credited on the notes themselves.
Defendant's final reliance is upon the case of Pick v. Brand, Inc., 135 N.J.L. 526 (Sup. Ct. 1947), where the court held the statute to be inapplicable. But, the facts there were of a simple loan to the corporation defendant usurious in fact, where the corporation, a month after the loan, issued its checks to pay same, the checks being returned "Payment stopped." Here the court held: "Although it is insisted that the suit is brought upon the checks, it seems entirely clear that actually the recovery sought is upon the loan itself," not upon the checks as corporate paper.
But, in the case at bar, the facts are far different. The present situation involves the issuance of a series of promissory notes, executed and due on different dates, the note agreements being further complicated by default-acceleration clauses, by provision for the payment of attorneys' fees, and by the issuance of a chattel mortgage. As both the pleadings and the pretrial order indicate, this suit is in fact on the notes, as affected by the special agreements incorporated in such notes. Thus Pick v. Brand, supra, is inapplicable.
Since the defense of usury cannot be pleaded by the corporate maker of the notes, it is likewise unavailable to the individual endorsers on the notes. Commercial Funding Corp. v. Melroy Const. Co., 106 N.J. Eq. 11 (Ch. 1930); Liebers v. Plainfield, &c., Bldg. Co., 108 N.J. Eq. 391 (Ch. 1931).
Plaintiff's motion to strike the defense of usury will be granted.