### PARDEE v. FETTER.

1. USURY—INTEREST.
    Generally, the reservation of a usurious rate of interest on a note or similar obligation will, if properly raised, defeat recovery of any interest (CL 1948, §§ 438.52, 438.53).

2. SAME—CORPORATIONS.
    No corporation may raise the defense of usury in any action brought against it (CL 1948, § 450.78).

3. CORPORATIONS—USURY—ACCOMMODATION INDORSER.
    An individual who signs a note as the accommodation indorser of a corporate maker has commensurate liability thereon with that of the principal and is not entitled to invoke the defense of usury (CL 1948, §§ 438.52, 438.53, 450.78).

    SMITH, BOYLES, and BLACK, JJ., dissenting.

Appeal from Wayne; Neuenfelt (Lila M.), J. Submitted January 10, 1956. (Docket No. 60, Calendar No. 46,608.) Decided May 14, 1956.

Action by M. L. Pardee, doing business as M. L. Pardee & Co., against Harold E. Fetter to enforce

REFERENCES FOR POINTS IN HEADNOTES
[1] 55 Am Jur, Usury §§ 87, 139.
[2] 55 Am Jur, Usury § 104.
[3] 55 Am Jur, Usury § 105.

obligation as accommodation indorser on note. Summary judgment for plaintiff. Defendant appeals. Affirmed.

*Goddard, McClintock, Fulton & Donovan,* and *Theodore Souris,* for plaintiff.

*David M. Miro,* for defendant.

CARR, J. Under date of May 27, 1949, a corporation of which defendant Fetter was president executed and delivered to plaintiff a promissory note in the sum of $5,000, due August 27th following, with interest at the rate of 2-1/2% per month. Defendant was an accommodation indorser on the instrument, waiving presentment for payment, notice of nonpayment, protest and notice of protest. Prior to the maturity of the obligation the corporation was adjudicated a bankrupt. Subsequently, on July 28, 1954, plaintiff received the sum of $2,866.39 from the assets of the estate. The case at bar was instituted in the trial court shortly thereafter for the purpose of enforcing liability of the defendant for the payment of the balance of the obligation. It is claimed that the amount received in the bankruptcy proceedings was applied against accrued interest.

The declaration filed by plaintiff averred the execution of the note, indorsement by defendant Fetter at the time of such execution, the bankruptcy of the maker, and the default in payment except as to the sum received from the bankrupt's estate. Judgment was claimed in the principal amount of the obligation plus interest computed at the rate designated. Defendant by answer admitted the material facts pleaded by plaintiff with reference to the giving of the note and its indorsement by him. By way of affirmative defenses the answer further alleged that the rate of interest reserved was usurious, that the

note was executed by defendant without consideration, and that plaintiff had failed to exhaust his remedies against accounts assigned as collateral security.

After the cause was at issue plaintiff moved for summary judgment, supporting such motion by affidavit, on the basis of the facts as claimed by him. Defendant, by affidavit of merits, set forth the issues suggested by the affirmative defenses pleaded in the answer. Following a hearing on the motion the trial court determined the questions raised in favor of the plaintiff, and judgment was entered for the amount determined to be due by way of principal and interest on the note, together with costs. From such judgment defendant has appealed, asserting that the trial judge was in error in holding that the defense of usury was not available to him. The other questions suggested by defendant's answer and affidavit of merits are not raised on appeal.

As a general proposition the reservation of a usurious rate of interest on a note or similar obligation will, if properly raised, defeat recovery of any interest. CL 1948, §§ 438.52, 438.53 (Stat Ann §§ 19.12, 19.13). We are not concerned here with the statutory provision permitting a rate of interest in excess of 7% per annum on evidences of indebtedness issued by authority of the Michigan public service commission, or the Michigan corporation and securities commission, on which a higher rate is expressly permitted. However, CL 1948, § 450.78 (Stat Ann § 21.78) is applicable. Said section provides, in substance, that no corporation may raise the defense of usury in any action brought against it. It is conceded in the case at bar that under this provision, the validity of which was sustained in *Thomas* v. *Union Trust Co.,* 251 Mich 279, the corporate maker of the note in question, had it been sued on the note, could not have interposed a defense of usury. It is

the claim of the plaintiff, in substance, that the defendant indorser is in no different position in this respect. As before noted, the trial court agreed with plaintiff's contention.

In support of his position on appeal defendant cites and relies on *Bock* v. *Lauman,* 24 Pa St 435. That case involved the liability of the indorser of a bill of exchange drawn in New York by the agent of a corporation in favor of the president thereof. Subsequent to indorsement it was delivered to a note broker to be sold on behalf of the corporation. This was done at a substantial discount. The court concluded that the rights and obligations of the indorsers should be determined in accordance with the statutes of New York. Attention was directed to a provision of such statutes making an attempted reservation of a usurious rate of interest a misdemeanor, and also to another provision denying corporations the right to interpose the defense of usury in any action. Reference was made to the fact that at the time the interpretation of the statutory provisions involved had not been clearly expressed, the court finally reaching the conclusion that, even though the corporation could not raise the issue of usury, the indorsers, who in effect occupied the position of sureties, could do so. Judgment was entered accordingly.

It appears from a line of New York cases subsequent to decision in *Bock* v. *Lauman, supra,* that the courts of that State have recognized a construction of the pertinent statutes at variance with that accepted by the Pennsylvania court. In commenting on this situation it is said in an annotation found in 6 ALR 586 that:

"Notwithstanding some early decision to the contrary (*Bock* v. *Lauman* [1855], 24 Pa St 435; *Market Bank of Troy* v. *Smith* [1858], Fed Cas No

9,090; *Hungerford's Bank* v. *Dodge* [1860], 30 Barb [NY] 626 [10 Abb Pr 24, 19 How Pr 39], reversing [1858], 9 Abb Pr 124), it is settled that the effect of the New York statute which provides that 'no corporation shall hereafter interpose the defense of usury in any action' is to prevent not only the corporation itself, but also its surety, guarantor, or indorser, from setting up usury."

In support of the statement the annotator cites a number of cases, including *Rosa* v. *Butterfield,* 33 NY 665; and *Stewart* v. *Bramhall,* 74 NY 85. In the *Rosa Case* the action was on notes given by a corporation as evidence of indebtedness, a rate of interest of 12% being reserved. The defendants were guarantors on the obligations. It was held that the agreement by the corporation to pay more than 7% interest per annum was binding on it and that the defendants were (p 675) "guarantors of lawful contracts, and therefore liable upon their guaranties." This decision was followed in *Stewart* v. *Bramhall, supra,* in which it was held that the defendant, who was an accommodation indorser on the note of a corporation, could not defeat liability on the ground of usury. In reaching such conclusion, it was said (p 87):

"The corporation was the borrower, and primarily liable on the note, and the defendant was surety merely. As such he must abide by the condition of his principal and has no separate standing in respect to the defense of usury. (*Union National Bank of Pittsburgh* v. *Wheeler,* 60 NY 612.)"

Of similar import are: *Salvin* v. *Myles Realty Company,* 227 NY 51 (124 NE 94, 6 ALR 581); *General Phoenix Corporation* v. *Cabot,* 300 NY 87 (89 NE2d 238); *Ollendorf* v. *Lissberger,* 176 Misc 661 (28 NYS2d 455).

In accord with the New York cases, above cited, is *Tennant* v. *Joerns,* 329 Ill 34 (160 NE 160). There the defendants were guarantors of notes executed by a corporation and sought to defend an action to enforce their liability on the ground that a usurious rate of interest had been reserved. A State statute in force at the time, a provision of the general corporation act of the State, granted to corporations the right to borrow money at such rate of interest as might be determined without reference to restrictions under any usury law of the State. The court sustained the validity of the provision as against certain objections raised, holding that the purpose of the legislature was to withdraw from the operation of the statute relating to usury loans made to corporations. It was further pointed out that the defense of usury rests upon statute and not on the basis of a common-law right. In rejecting the claim that, while such defense was not available to the corporation, it might be invoked by sureties, the court said (p 41):

"The general rule is that the liability of the surety is no greater and no less than that of the principal, and where the defense of usury could not be invoked by the corporation it cannot be invoked by the surety."

In support of the conclusion certain New York cases were cited, including *Rosa* v. *Butterfield, supra;* and *Salvin* v. *Myles Realty Company, supra.*

In *Fine* v. *H. Klein, Inc.,* 10 NJ Super 295 (77 A2d 295), the action was brought on promissory notes executed by the defendant corporation and indorsed by individual defendants. Pleas based on claims that the rate of interest reserved was usurious were interposed. The statute of New Jersey is very similar to that of Michigan and in terms precludes a corporation from setting up the defense of usury in an

action to enforce a remedy on a corporation obligation. It was held that under such statute the defense of usury was not available to the maker of the notes and that it was (p 300) "likewise unavailable to the individual indorsers on the notes." Plaintiff's motion to strike the defense of usury was granted. A conclusion in accord with the decisions above cited was likewise reached by the Circuit Court of Appeals of the 8th circuit in *Winkle* v. *Scott* (CCA), 99 F2d 299.

Under the facts in the instant case the liability assumed by the accommodation indorser was in practical effect that of a surety. *Warner* v. *Fallon Coal Mines Co.*, 246 Mich 493. The obligation of the corporate maker of the note was to pay it in accordance with its tenor. The liability of defendant Fetter was commensurate with that of the principal. It must be assumed that he intended to bind himself accordingly. Under the general rule recognized by the cases above cited, and by other decisions of like nature, he was not entitled to invoke the defense of usury.

The trial court came to the correct conclusion, and the judgment is affirmed, with costs to plaintiff.

DETHMERS, C. J., and SHARPE, and KELLY, JJ., concurred with CARR, J.

BLACK, J. (*dissenting*). For reasons presently made apparent, I am unable to sign the opinion prepared by Mr. Justice CARR.

The text of this opinion will be taken from *Rockmore* v. *Epstein,* 127 Misc 526 (217 NYS 76, 77), as follows:

"Every one except a corporation may invoke the defense of usury. The determination of whether the denial of a defense of usury to a corporation can be extended by implication, so as to deny such a defense

to an individual who is a comaker of a note is to be determined by the nature and character of that individual's obligation under the note and the circumstances under which he assumed the obligation.";

and from *Pink* v. *L. Kaplan, Inc.*, 252 App Div 490, 492 (300 NYS 45, 47, 48), as follows:

"Under the present state of the evidence, we think a triable issue exists as to whether or not the individual defendants were parties to a usurious loan agreement. If, as a matter of fact, they were merely sureties or guarantors of the corporation's debt, the defense of usury is not available to them. If they were parties to a loan agreement at an unlawful rate, the defense is good. We believe these matters are sufficiently in dispute to preclude their determination on affidavits; and summary judgment should not have been granted against the individual defendants."

May 27, 1949, Sax-Kay, Inc., a Michigan corporation, and defendant Fetter executed and delivered to plaintiff Pardee a promissory note in the sum of $5,000. The note is usurious on its face and, on account thereof, we are confronted with disputed interpretation of section 78 of the general corporation act (CL 1948, § 450.78 [Stat Ann § 21.78]), which provides in substance that no corporation shall plead the defense of usury.

October 8, 1954 plaintiff brought this suit in the Wayne circuit against defendant Fetter. He declared on the note, alleged total payment of $2,866.39 thereon, and asked judgment for an alleged unpaid balance calculated at the note-specified usurious rate. Defendant pleaded usury. Plaintiff says he cannot. The issue, so framed, comes to us on review of summary judgment, granted plaintiff by the Honorable Lila M. Neuenfelt, circuit judge, for the full usury-calculated balance as claimed.

The decisive question is essentially one of prac-- tice, and it may be put this way: Was the court be- low justified in finding, as a matter of law in the course of proceedings under Court Rule No 30 (1945), that defendant was an accommodation party?

If we are ready to adopt the so-called New York rule that accommodators of corporations are de- prived of the defense of usury (*Rosa* v. *Butterfield,* 33 NY 665; *Stewart* v. *Bramhall,* 74 NY 85; *Luding- ton* v. *Kirk,* 17 Misc 129 [39 NYS 419])—I for one am not,—we, at least, should be able to make initial determination, as a matter of law in the case before us, that the usury-pleading individual is such an accommodator. I say this because, even in the State whose law we are asked to follow, the courts have made it abundantly clear that "An individual who becomes a joint primary debtor with the corporation may plead usury though the corporation is barred from doing so." (*Cabrera* v. *Olsen,* 165 Misc 374 [300 NYS 524, 526]).

Mr. Honigman says (Honigman, Michigan Court Rules Annotated, pp 301, 302):

"The burden of establishing the nonexistence of a genuine issue of fact which would warrant the grant- ing of a summary judgment is always on the moving party. If from the facts presented to the court at the hearing on the motion for summary judgment there appears doubt as to whether or not there are controverted issues of material facts, the motion for summary judgment should be denied. When it ap- pears that there are controverted material facts, the court cannot dispose of the case by deciding those fact issues in the course of the hearing of the motion. In such event, the summary judgment must be denied and the cause left for disposition by a trial in the regular course. * * *

"Federal rule 56 deals with motions for summary judgments. While that rule is in some respects dif- ferent from the instant rule and provides for broader

scope of inquiry for determining whether or not there are genuine issues of fact, the basic principles applicable to the Federal rule and the instant rule are the same. Thus, the vast number of decisions under the Federal rule should be helpful in the interpretation of the instant rule."

The quoted "Author's Comment" is an accurate summary of Federal decisions, as well as our own, dealing with summary judgment practice. It is clear therefrom that the plaintiff's affidavit or affidavits in a case of this nature must contain verification of all the material facts needed to establish prima facie the claimed right of recovery of usury plus principal and legal interest.

"It is only where it is perfectly clear that there are no issues in the case that a summary judgment is proper. Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment, which was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of its being presented." *Pierce* v. *Ford Motor Co.* (CCA), 190 F2d 910, 915 (certiorari denied, 342 US 887 [72 S Ct 178, 96 L ed 666]).

"Upon a motion for a summary judgment it is no part of the court's function to decide issues of fact but solely to determine whether there is an issue of fact to be tried. *Ramsouer* v. *Midland Valley R. Co.* (DC Ark, 1942), 44 F Supp 523. All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment. *Weisser* v. *Mursam Shoe Corporation* (CCA), 127 F2d 344 (145 ALR 467)." *Hunter* v. *Mitchell* (CCA), 180 F2d 763, 764.

"On a motion for a summary judgment the burden of establishing the nonexistence of any genuine issue

of fact is upon the moving party, all doubts are resolved against him, and his supporting affidavits and depositions, if any, are carefully scrutinized by the court. The object of the motion is to separate the formal from the substantial issues raised by the pleadings, and the court examines evidence on the motion, not to decide any issue of fact which may be presented, but to discover if any real issue exists." *Walling* v. *Fairmont Creamery Co.* (CCA), 139 F2d 318, 322.

"In considering such a motion (for summary judgment) as in a motion for a directed verdict, the court should take that view of the evidence most favorable to the party against whom it is directed, giving to that party the benefit of all favorable inferences that may reasonably be drawn from the evidence. If, when so viewed, reasonable men might reach different conclusions, the motion should be denied and the case tried on its merits." *Ramsouer* v. *Midland Valley R. Co.* (CCA), 135 F2d 101, 106.

"All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment. *Weisser* v. *Mursam Shoe Corporation* (CCA), 127 F2d 344 (145 ALR 467)." *Toebelman* v. *Missouri-Kansas Pipe Line Co.* (CCA), 130 F2d 1016, 1018.

"Both of the affidavits are subject to the criticism that they dealt principally with conclusions rather than with statements of fact. Had plaintiff more particularly set up the consideration for the note, we would be inclined to hold that defendants' denial of consideration was not sufficiently specific. But, as both affidavits are on the border line, summary judgment should not be entered." *Scripsema* v. *DeKorne*, 276 Mich 634, 636.

Guided by foregoing comment and settled view of practice under Court Rule No 30 (1945), we examine the proceedings below on which it is said that defendant Fetter was Sax-Kay's accommodator.

Plaintiff's material affirmance, in his affidavit filed under section 1 of the rule, reads this way:

"4. On May 27, 1949, Sax-Kay, Inc., a Michigan corporation, whose president then was defendant Harold E. Fetter, borrowed the sum of $5,000 from affiant and made its promissory note in writing whereby it promised to pay to affiant or to his order the said sum of $5,000 on August 27, 1949.    *    *    *

"5. Simultaneously therewith, defendant Harold E. Fetter then and there indorsed said note in the following manner:

" 'The undersigned severally waive presentment for payment, notice of nonpayment or dishonor, protest and notice of protest for nonpayment, of any instalment of principal or interest and hereby consent to the extension of time payment without notice.

"/s/ HAROLD E. FETTER

and thereupon said note was handed to affiant, so indorsed, in exchange for the sum of $5,000, as aforesaid.    *    *    *

"7. Sax-Kay, Inc., was adjudicated a bankrupt on August 10, 1949, by the district court of the United States for the eastern district of Michigan, southern division, in bankruptcy, and on July 28, 1954, affiant received the sum of $2,866.39 from the assets of the estate of the bankrupt, in partial payment on said note."

Defendant's affidavit of merits contains no presently material fact-information excepting such as may be inferred from conclusion (2) of his affidavit, reading as follows:

"(2) Further answering said affidavit, your deponent says that said promissory note was executed by your deponent without consideration."

Neither party has testified, by affidavit or otherwise according to strict requirement of Court Rule No 30 (1945), to facts on which the circuit court and

this Court in turn might of right brand defendant as an accommodation party per statute (CL 1948 § 439.31 [Stat Ann § 19.71]). The word "accommodation" is not mentioned in the respective affidavits and there is no averred fact in either justifying judicial conclusion that defendant lent his name to the corporation and that he signed the instrument "without receiving value therefor." Defendant's quoted conclusion—that he executed without consideration—is copied from his answer and is of no greater evidentiary worth than would be accorded such a statement if uttered from the witness stand without fact support. Finally, defendant has not admitted by pleading or otherwise that he is an accommodation party. He has admitted that he is an "indorser." That is not sufficient to destroy issue as to practice of usury against him—neither does it warrant usurious judgment against him.

. An "indorser" isn't necessarily an "accommodation party," and an "accommodation party" isn't necessarily an "indorser." When, and in suit between original parties thereto, a court of justice assumes to decide the rightful status of parties to a negotiable instrument, it should obtain all the evidentiary and admissible facts that are determinative of such status. That has not as yet been seen to in the case before us.  .

The presently decisive facts are these: The defendant is conclusively shown by plaintiff's affidavit as having been president of the cosigning corporation; the affidavit shows that defendant signed the note as president of the corporation in addition to and at the time his personal signature was affixed to reverse side thereof; the affidavit thus establishes that defendant personally participated in negotiation of the transaction evidenced by the note and it shows finally that defendant's presumptively insolvent corporation was on the date

of the note a bare 75 days away from adjudication as a bankrupt. Actually, this short-term usury-shot note had not even matured when the cosigning corporation went under. The record in consequence discloses fair earmark of contrived use of a failing corporation's usury-cloak to evade our prohibition against usury, and it affirmatively suggests that cross-examination would unearth facts not yet disclosed on which the pivotal question of usurious intent is usually resolved.

I do not say the record as it stands establishes, as a matter of law, that the defendant was not an accommodation indorser. I do say from very face of the motion for summary judgment and respective affidavits that the defendant president and the now defunct corporation prima facie were joint makers of the note (*Perron* v. *First National Bank,* 289 Mich 629; *City National Bank* v. *Price's Estate,* 225 Mich 200) and that the motion for summary judgment should have been denied for want of a fact vital to plaintiff's asserted legal position.

I wish to record by illustration my concern upon affirmance of the decision below—a decision which if let to stand will commit individual accommodation indorsers of corporate papers in this State to the brutality of usury. Let me assume that the widow Jones, dependent entirely on life savings of $11,000, had been inveigled without benefit to herself into accommodation indorsement of this Sax-Kay note and that she—not the president of Sax-Kay—had thus become defendant in this suit. Would the court below then have been so quick to grant summary judgment against her as claimed by plaintiff? I answer by pointing up from the record these figure-facts: The holder of this note, having already received $2,866.39 toward payment thereof, would then receive by such judgment against the widow another $10,490.73, making a grand total of $13,357.12 for

and on account of his loan in 1949 of $5,000. Shylock, where'er he may be, undoubtedly becomes envious.

I would reverse for trial of pleaded issues or, in alternative, order the taking of testimony as indicated on authority of Court Rule No 72 (1945). The Court in the *Epstein Case* permitted such procedure in substance, as shown in the final paragraph of decision, and the practice of taking testimony on motion for summary judgment when any fact is possibly in doubt should be encouraged. See in support of this last affirmation Mr. Honigman's comment on page 303 of his mentioned work.

SMITH, J. (*dissenting*). It is impossible, in my opinion, to ascertain from this record whether or not the defendant is an accommodation party. The question involves the interpretation of a classic ambiguity in the negotiable instruments law, that found in the original section 29 thereof.* (CL 1948, § 439.31 [Stat Ann § 19.71].) See Ames, The Negotiable Instruments Law, 14 Harvard LR 241; Beutel's Brannan, Negotiable Instruments Law (7th ed), p 554. If defendant is not an accommodation party, what is his status with respect to the instrument? This question, not yet answered, lies at the very threshhold of the case.

The judgment should be reversed and the cause remanded for trial on the merits. Costs to appellant.

BOYLES, J., concurred with SMITH, J.

The late Justice REID took no part in the decision of this case.

---

* The "original section 29", here referred to, relates to the act as prepared under the supervision of the National Conference of Commissioners on Uniform State Laws. It became section 31 of the act as adopted in this State.—REPORTER.