In the Matter of JEFFREY TOWERS, INC., Respondent-Appellant, v. IRMA STRAUS et al., Appellants-Respondents.

Second Department, February 24, 1969.

*Moore & Romm* (*Milton L. Romm* of counsel), for appellants-respondents.

*Seymour Robinowitz* and *Neal A. Permutt* for respondent-appellant.

MUNDER, J. Three issues are raised by this appeal: (1) whether the instant proceeding was properly brought pursuant to section 1921 of the Real Property Actions and Proceedings Law (which section provides that a mortgagor may apply to the Supreme Court for an order discharging his mortagage when the mortgagee refuses to accept a properly tendered payment), inasmuch as the instant mortgagees, the appellants-respondents Straus and Romm, claim they were justified in refusing to satisfy the mortgage, which secured not only a monetary obligation but also other obligations for the benefit of lands retained by the mortgagees; (2) whether, when the petitioner, Jeffrey Towers, Inc., sought to exercise its right of prepayment, the mortgagees validly refused to satisfy the mortgage; and (3) whether interest was properly cut off as of the date of the refused tender.

The facts are undisputed. On October 29, 1965 Straus and Romm conveyed to the petitioner's predecessor in title, Twin Towers, Inc., a 5-acre portion of a 13-acre tract which fronted on the northwest side of Central Park Avenue in Yonkers, across the street from the S. Klein Shopping Center. The 8-acre portion retained by Straus and Romm has no frontage on Central Park Avenue. As part of the consideration, Twin Towers on October 29, 1965 executed and delivered to Straus and Romm, as mortgagees, a purchase-money mortgage in the sum of $500,000. The petitioner acquired title to the five acres on October 12, 1966, subject to the mortgage. As above indicated, the mortgage not only secured the monetary indebtedness stated therein but other enumerated conditions and covenants which were for the benefit of the mortgagees and their retained lands, namely, (1) construction by the mortgagor of a sewer connection across Central Park Avenue by October 29, 1967 to service the retained lands (covenant 20); (2) construc-

tion by the mortgagor of an alternate driveway by October 29, 1968 to service the retained lands (covenant 19); (3) completion of an apartment building on the mortgaged premises, to be reached in part by this driveway (covenant 23, subd. [e]); (4) payment to the mortgagees of their indefinite cost in constructing the alternate driveway and in constructing the sewer connection, as an addition to the specific mortgage debt of $500,000, should the mortgagor fail to do this work (covenants 20, subd. [e]; 19); (5) furnishing by the mortgagor of a sewer construction surety bond as an alternate to the sewer connection construction work (covenants 20, 23, subd. [g]); (6) consents of the mortgagor to be given to any applications by the mortgagees for a zoning change, special exception permit or variance as to the retained lands (covenants 21; 23, subd. [c], [d]); and (7) defaults of the mortgagor under the mortgage (covenants 23, subd. [b]). The mortgage also provided for prepayment as follows: "Any owner of the mortgaged premises may at any time after January 1, 1966 pay the said sum of $500,000 and accrued interest thereon upon giving to the holder hereof and of the accompanying note 10 days prior written notice of such prepayment."

Simultaneously with the creation of the mortgage, the mortgagor and mortgagees entered into an easement agreement which created an easement in favor of the mortgagees over the alternate driveway. It was provided in that agreement: "The said easement and right of way shall be a covenant running with the land until such time as all of Morrow Avenue shall have been opened, laid out, and improved as a public street of the City of Yonkers and accepted for dedication or declared by the City of Yonkers as such public street, and provided the said retained property of the Grantors shall abut upon, front upon and be contiguous to said public street, whereupon the said easement and right of way for said Alternate Driveway shall cease and terminate. The Grantee reserves the right to use the said Alternate Driveway in common with the Grantors."

These easement rights are incorporated by covenant 19 of the mortgage. A clause in the contract of sale (dated March 17, 1965) provided, in the following language, for the termination of the mortgagees' rights in the alternate driveway upon the improvement and dedication of Morrow Avenue as a public street: "The said purchase money mortgage shall provide for the termination of mortgagee's rights in and to the said new driveway upon the opening and laying out and improvement of said Morrow Avenue as shown on said filed map number 3990 and upon the dedication and acceptance of dedication of Morrow

Avenue as a public street by the City of Yonkers and provided said Morrow Avenue shall be in public use as a street to and from mortgagee's said retained lands.''

On April 11, 1967 the Common Council of Yonkers, by Special Ordinance No. 121, declared Morrow Avenue a public street. On August 1, 1967 the specific sum of $500,000 was reduced to $225,000 by a payment of $275,000. On February 7, 1968, after proper notice, the petitioner tendered the $225,000 balance with interest to the date of tender and expressly conditioned its tender upon receipt of a satisfaction of the mortgage. At the time of the tender, no work had been done on the sewer or the alternate driveway, and the apartment building had not been completed. The mortgagees rejected the tender on the ground that the demand for a satisfaction of the mortgage was improper. Thereafter, the petitioner instituted the instant proceeding pursuant to section 1921 of the Real Property Actions and Proceedings Law for an order summarily canceling and discharging the mortgage.

Preliminarily, there is some question as to whether the mortgage properly sought to secure the performance of unliquidated obligations such as the promises to build a driveway and a sewer. Although neither party raises this issue on this appeal, it is well established that a mortgage is any conveyance of land intended by the parties to be a security for the payment of money or the doing of some prescribed act (*Burnett* v. *Wright*, 135 N. Y. 543; 2 Rasch, Real Property Law and Practice, § 1681). Thus, a lien can be established at either the value of a stated indebtedness or the value of the act to be done. In the instant case, the value of constructing a driveway and a sewer can be readily established if the amount of the lien must be reduced to a stated amount. The cases, however, hold that even this is unnecessary. In *De Clow* v. *Haverkamp* (198 App. Div. 83) the mortgage provided that the mortgagee was entitled to support and maintenance for herself and her husband during their joint lives and also during the life of the survivor; although an amount ($4,000) was inserted in the mortgage to furnish a convenient basis for computing interest, that was not meant to limit the amount which the mortgagor might be required to pay for support and maintenance. The Fourth Department held the mortgage to be a valid and subsisting lien on the real estate therein described until the care, maintenance and support of the mortgagee (she survived her husband) had been paid for.

The only limitation on this rule is that the mortgage must clearly refer to the obligation which the realty is to secure.

*Castelli* v. *Walton Lake Country Club* (112 N. Y. S. 2d 179) was concerned with an agreement which was part of the consideration for a conveyance and was entered into simultaneously with the delivery of the deed and a purchase-money mortgage. The agreement provided that the mortgagor was to give the mortgagee room and board. The Supreme Court, Orange County, held that the agreement was personal in nature and was not a lien upon the realty. However, the agreement did not indicate that the property was security for the obligation of the agreement, and the mortgage did not state that it was subject to the agreement. Also in point is *Matter of Cumberland Garage* (73 N. Y. S. 2d 571), which involved a mortgage that not only secured payment of money but stated that the mortgagor was to purchase from the mortgagee, during a stated period, all the gasoline sold at the mortgaged premises. The Special Term in Queens County refused to grant cancellation of the mortgage even though the principal amount had been paid, because the period in question had not expired. Mr. Justice FROESSEL wrote (p. 573): "It is also well settled that a mortgage may be kept alive, even after payment in full, if such was the intention of the parties, provided innocent third persons are not thereby prejudiced (Wiltsie on Mortgage Foreclosure, 5th Ed., Vol. 1, Sec. 126). In Salvin v. Myles Realty Co., 227 N. Y. 51 * * * it was expressly held that 'There is no doubt that a mortgage, when paid, may be kept alive for other purposes, when the rights of creditors and third parties have not intervened.' (Citing cases)."

Moreover, the wording of section 1921 (which states that the satisfaction piece must certify "that the mortage has been paid *or otherwise satisfied and discharged*" [emphasis added]) indicates that a mortgage can be satisfied by some act other than payment. It is our opinion that the instant mortgage, although complex and unusual in its terms, is entirely valid as to the nonmonetary items.

The judgment appealed from (1) adjudged that, upon the petitioner's payment, within a stated time, of the amounts tendered by the petitioner, the principal and interest secured by the mortgage would be paid and the mortgagees shall execute and deliver to the petitioner a recordable instrument to such effect but which shall further state that the mortgage was not to be discharged and satisfied until completion of the construction of the driveway, the sewer main and the building; and (2) contained a direction in the third decretal paragraph similar to the above further statement prescribed for the recordable instrument. The mortgagees have appealed from

the entire judgment, except the third decretal paragraph. Their notice of appeal also states that they appeal from the failure of the judgment to contain certain provisions (fully set forth in the notice). The petitioner has cross-appealed from the portions of the judgment which contain the verbiage that the mortgage was to remain in effect until completion of the construction above mentioned.

It is our opinion that all the decretal provisions of the judgment should be reversed, except the third decretal paragraph, on the law and the facts, with $10 costs and disbursements to the appellants-respondents. The third decretal paragraph must remain since the mortgagees have excluded it from their appeal.

Petitions submitted pursuant to section 1921 require a showing of willful and unjustified refusal on the part of the mortgagee to satisfy the mortgage (*Matter of Lyons* [*Hamilton Fed. Sav. & Loan Assn.*], 276 App. Div. 1086). Here, the question is not whether the petitioner is entitled to prepay the outstanding indebtedness but whether it is entitled to an absolute satisfaction of the mortgage as a matter of right. Inasmuch as the entire issue revolves about satisfaction of the mortgage, something to which, on the submitted papers, the petitioner is clearly not entitled, the refusal of the mortgagees was not unjustified.

As to the petitioner's reliance on the "declaration" of Morrow Avenue as a public street, the clear intention of the parties, as expressed in the initial contract to purchase the land (to which the petitioner's predecessor in title, Twin Towers, Inc., was a signatory), in the mortgage arrangements, and in the easement agreement executed concurrently with the mortgage, was to effectuate a means of access to the retained lands, either by an alternate driveway or by the construction of a municipal street. Obviously, the official creation of a paper street does not meet this purpose. Morrow Avenue must be a serviceable public street, in fact as well as in law, and the easement and mortgage securing the mortgagees' right to a driveway have not terminated and the mortgage cannot now be discharged of record.

The same is true with regard to the petitioner's obligation to construct the sewer connection. The petitioner's argument that the use and need for the sewer connection at the time of the tender of payment was useless and unnecessary because the mortgagees' land was still undeveloped is specious and does not excuse the petitioner from its clear obligation to install the sewer.

There likewise is no doubt that the petitioner has the right to prepay the outstanding indebtedness; the covenants of the mortgage are independent and are not conditioned on each other. Inasmuch as the petitioner insisted on satisfaction when it tendered its payment and inasmuch as the mortgagees rightly refused to accept payment on those terms, interest should continue to run until payment is tendered without the condition for satisfaction. It is well established that in order to stop the running of interest on an undisputed obligation a tender of payment must be unconditional (*Noyes* v. *Wyckoff*, 114 N. Y. 204; *Byrne Constr. Co.* v. *New York State Thruway Auth.*, 19 A D 2d 192).

CHRIST, Acting P. J., BRENNAN, HOPKINS and BENJAMIN, JJ., concur.

Judgment reversed, except for the third decretal paragraph thereof, on the law and the facts, with $10 costs and disbursements to appellants-respondents.