John R. Tenney, J.
In this action to foreclose a mortgage, the defendants Donald Fisher and Thelma Fisher have moved for an order dropping the defendant Metropolitan Bank as a party and for a further order canceling and discharging its mortgage because it has been satisfied.
The plaintiff Skaneateles Savings Bank is a holder of a first *794 mortgage on property owned by J. R. Herold & Son, Inc. and Joseph R. Herold, Sr. and Jr., individually. For the purposes of this motion, the plaintiff’s mortgage is not a factor and will not be considered.
On the 6th day of November, 1972, Joseph Herold, Sr. executed a mortgage to the Metropolitan Bank of Syracuse in the amount of $80,000 to be payable in seven years with interest at the rate of 814%. This mortgage was guaranteed by the Small Business Administration (SBA). The recorded mortgage stated in part "in order to secure the repayment thereof with interest according to the terms of a certain bond or note bearing even date herewith”. The bond referred to a written guarantee of payment dated the same day. The written guarantee or note provided that interest would be at 814% payable within seven years.
On October 23, 1972, Thelma Fisher and Donald Fisher, as executor of the estate of Bernard Fisher, deceased, entered into an agreement with the Herolds wherein it was agreed that certain demand notes totaling $30,000 were then being held by the Fishers. The agreement acknowledged an application by the Herolds for an SBA loan. It further acknowledged that in order to get the SBA loan, Fisher would be required to modify the existing terms of the indebtedness. "The lender would have to accept monthly payments of principal and accrued interest for the same term of years as the Metropolitan Bank loan.”
With this understanding, the Herolds agreed to execute a new promissory note in the sum of $30,000 to be repaid over a period of seven years at the rate of TYi% per annum. It was further agreed that the security for this note would be a collateral ágreement on the machinery and a mortgage on the real property. The security was to be subordinated to the first mortgage then in existence and to the second mortgage which would secure the loan to be advanced by the Metropolitan Bank.
The Metropolitan Bank loan was made, and the mortgage was recorded as indicated. Subsequently, the loan with Metropolitan was renegotiated and in February, 1974, a new agreement was entered into between the Herolds and the Metropolitan Bank. This new agreement was evidenced by a new note in the amount of $88,000 with interest at 11% payable over a period of 10 years and was approved by the SBA. One of the conditions for the new loan was that the proceeds be utilized *795 to pay the previous loan in the amount of $78,000. It also provided that it be secured by a second mortgage subject only to a first mortgage held by the Skaneateles Savings Bank. It further provided that the loan was contingent upon the borrower obtaining a duly executed term loan agreement from the Fishers which would provide for the retirement of their debt in monthly installments over a period of 10 years, and that it would be subordinated to the SBA approval loan. There is no indication that any such approval was ever secured from the Fishers.
Apparently, the SBA waived its requirement that such an agreement be obtained from the Fishers. The old note with a balance of $78,000 was paid in full, and a new note was executed in the amount of $88,000.
Fisher contends that the original mortgage was terminated when its conditions were met. This argument is technically correct so far as his position is concerned. However, as between the parties to the transaction, the mortgage was continued by their agreement. His subordinate position has changed because there is a new agreement which varies the conditions upon which he agreed to subordinate in the first place.
The effect of the new agreement was to increase the indebtedness, change the terms of payment and thus, substantially jeopardize his security. Since there was nothing in the original agreement which would put him on notice of a future advance, he cannot be bound by the transaction without his consent.
"A mortgage * * * may be taken and held as a security for future advances and responsibilities, to the extent of it, when that forms a part of the original agreement between the parties; and the future advances will be covered by the mortgage or judgment, in preference to the claim under a junior intervening incumbrance, with notice of the agreement. The principle is, that subsequent advances cannot be tacked to a prior security, to the prejudice of a bona ñde junior incumbrancer”. (Truscott v King, 6 NY 147, 157.)
Thus, the legality of future advances when anticipated as part of an original agreement is unquestioned. The junior creditor would be bound by the original agreement if he had notice of it. However, if the future advance was not part of the original agreement, then it would not bind the junior creditor. The agreement determines the extent and certainty of the junior incumbrancer’s contract. (Truscott, supra, p 160.)
*796 In Bank of Utica v Finch (3 Barb Ch 293), it was held that where a bond and mortgage were given to secure a particular debt mentioned therein, the mortgagee could not, as against subsequent purchasers or incumbrancers, claim it was a lien for an entirely distinct and different debt, upon parol proof, that it was intended to cover that debt also.
Procedurally, the original $80,000 bond was paid. With that payment, the purpose of the mortgage as stated on its face was terminated. It cannot be revived by a parol agreement and kept in force to secure another debt or liability. (3A Warrens Weed, New York Real Property, Mortgages, § 18.22, p 696.) Absent the written intention of the parties to keep the mortgage alive as security for a new obligation, it will be given no effect where the intervening rights of third parties are prejudiced thereby. (55 Am Jur 2d, Mortgages, § 395, p 438; Salvin v Myles Realty Co., 227 NY 51.)
A mortgage paid by a mortgagor may not be kept alive so as to retain its lien as against existing junior incumbrances without notice. (Bogert v Bliss, 148 NY 194; 55 Am Jur 2d, Mortgages, § 405.) Speaking for the court, Chief Judge Andrews recognized the intention of the parties in acknowledging the existence of the new mortgage. However, such a mortgage would not bear the same relationship to the mortgagee who was a predecessor in time to the new agreement.
Thus, the failure to secure the consent of the Fishers was a fatal error so far as the Metropolitan Bank is concerned. The proper procedure absent a written agreement would require notice to the Fishers and their consent before the existing loan was paid. Public policy requires that agreements dealing with real property be in writing, and that no unilateral change occur which would jeopardize a subordinate mortgagee. Transactions effecting an interest in real property should be open and upon notice to all parties involved. Private or secret agreements which might alter the relationship of parties or detrimentally effect their interest should not be permitted. (Bogert v Bliss, 148 NY 194, 199, supra.)
Therefore, Fisher’s motion to discharge the mortgage is denied because equity would intervene in any event to enforce the new mortgage as between the parties of the transaction. However, Fisher is entitled to a determination that his subordinate position has changed because of the unilateral action of the second mortgagee and mortgagor. Thus, Fisher is now the second mortgagee, and the Metropolitan Bank is in the posi *797 tion of junior incumbrancer subject to the interest of the Fishers.
Submit order accordingly.